295 N.J. Super. 409 (1996)
685 A.2d 78
IN RE APPLICATION OF ROSA LINDA FERNER TO ASSUME THE NAME KORIANDER.
Superior Court of New Jersey, Law Division Somerset County.
Decided August 5, 1996.
*410 Rosa Linda Ferner, Pro Se, applicant.
Deborah T. Poritz, Attorney General of New Jersey, (John K. Worthington, Deputy Attorney General) submitted a letter-brief and argued.
ASHRAFI, J.S.C.
In this unusual application for a legal name change, the court must decide whether to sanction the official use of a single name. The applicant is an unmarried adult woman without any dependents.
*411 Very little legal authority exists in this country on the precise issue presented here: whether the law permits official adoption of a single name. Although courts in New York have twice answered no to that question, the courts of New Jersey have not addressed the issue in a published opinion. Nor is there any specific statutory reference to official use of a single name. Because this court finds no law in this state prohibiting the requested name change, because applicant has shown lawful reasons for her request and no one has interposed a substantial objection, and, finally, because applicant's right to change her name as desired is not outweighed by a contrary public interest, the application will be granted.

Procedural History
In April 1996, Rosa Linda Ferner filed a verified complaint seeking to assume only a single name, Koriander, as her full name. The application complies with the statutory requirements for a legal name change contained in N.J.S.A. 2A:52-1 to -4., and with the similar pleading requirements of the applicable court rule, R. 4:72-1. The pleadings contain applicant's date of birth and social security number and assert that she has never been convicted of a crime and currently has no criminal matters pending against her. She swears further that the name change is not desired for the purpose of avoiding prosecution or debts or for any other fraudulent purpose.
Following routine procedures required by R. 4:72-3, the court originally set a return date of May 10, 1996, for the final hearing on the application and required the applicant to publish notice of the proposed name change and hearing date in a local newspaper. The applicant provided proof to the court that she caused the required notice to be published in the Courier-News, a daily newspaper in Somerset County, on April 25, 1996. No one filed any objection to the application before the May 10 hearing date.
Despite the lack of objection, the court did not grant the application at that time. Although neither the applicable statute nor rule require the applicant to notify the Attorney General *412 unless criminal charges are pending, the court ordered the applicant to serve her application upon the New Jersey Department of Law and Public Safety because of the unusual nature of the request. That state agency, under the Attorney General's direction, is responsible for providing legal representation to other state agencies. By an order dated May 21, 1996, the court also requested assistance from the applicant and the State regarding legal authority for or against the proposed name change. The court scheduled an evidentiary hearing for June 21, 1996, at which the applicant and any opposing parties could provide sworn testimony.
The State filed responding papers shortly before the hearing date but did not take a position against the change to a single name. No witnesses testified at the hearing against the application. Instead, the State provided the affidavits of two state employees to address possible confusion and record keeping difficulties for state agencies if the court approved the applicant's proposed name change. The applicant did not object to the submission of the State's affidavits, and the court has taken them into consideration. See R. 4:72-4. The court also took sworn testimony from the applicant at the hearing to determine her motives and her understanding of potential problems arising out of use of a single name.

Findings of Fact
Applicant was born Rosa Linda Carrasquillo and adopted her husband's surname, Ferner, when she married in 1987. She continued to use her married name after her divorce in December 1992. She has not used any other names, other than the name she wishes officially to adopt, Koriander. Her friends call her Kori.
She has no dependents and few family members using the name Carrasquillo. She does not wish to use her maiden name because it is difficult to spell and has caused confusion and problems for her in the past. Applicant testified that she has been using the name Koriander for a few months both socially and in her business as an artisan. Applicant creates "New Age" jewelry. *413 She has applied for membership with the American Craft Association under the name Koriander. Earlier, since 1994, she copyrighted music under the pseudonym Kori. She expanded that nickname to Koriander because she likes its sound and because she believes it to be appropriate for her crafting and artwork business. The applicant hopes now to simplify her affairs by legally assuming the name Koriander rather than having a business name that is different from her legal name.
The State ran a check of criminal and motor vehicle records and determined that there are no pending criminal matters against applicant and no history of criminal offenses. She has a clean driving record.
At the hearing, the State submitted the affidavits of Charles Kurkut, Chief, Bureau of Vital Statistics, Department of Health, and H. Arthur Smith, III, an employee of the Department of Transportation, Division of Motor Vehicles (DMV). Mr. Kurkut certified that the indexing system used by the Bureau of Vital Statistics requires both a surname and a given name. He also supplied sample forms that are used to record births, deaths, and marriages, and these forms also refer to first and last name, or, in the case of a marriage license and certificate, to a "full name." Mr. Smith, the DMV representative, similarly certified that the computer system used by the Division of Motor Vehicles operates on an algorithm system and requires a given and surname for drivers' license applications because all fields in the system must be completed for an application to be processed. Notwithstanding these certifications, the Deputy Attorney General representing the State told the court at the evidentiary hearing that if the proposed name change is granted, the DMV would be able to accommodate the applicant by using, for example, "Ms." as a first name so that both necessary fields for its computer forms could be filled. Applicant was agreeable to such a procedure to satisfy the requirements of the DMV computers.
As in its written response, the State took no position at the evidentiary hearing other than to point out the possible confusion *414 in record keeping for State agencies. Despite the potential for confusion, the State ultimately informed the court that the State agencies were capable of handling a single name to identify an individual. The State simply requested that any order that the court might enter reflect that Koriander is to be considered a surname for record keeping purposes.
The court took a further opportunity at the evidentiary hearing to question the applicant about her consideration and acceptance of the possible difficulties that she may encounter with only a single name. The applicant indicated a willingness to accept any bureaucratic obstacles. She also volunteered that she would consider adopting a second name if she should remarry. Finally, she is even willing to accept a separation of Koriander into Kori Ander for record keeping purposes, although she does not wish to be known by the surname Ander.

Conclusions of Law
As explained to the applicant at the evidentiary hearing, a person has a common law right to assume any name he or she lawfully chooses.
At common law, any adult or emancipated person is free to adopt any name, except for a fraudulent, criminal or other illegitimate purpose. N.J.S.A. 2A:52-1 is remedial legislation establishing a method of judicial recordation of name changes.
[In the Matter of Eck, 245 N.J. Super. 220, 223, 584 A.2d 859 (App.Div. 1991)].
Thus, applicant is aware that she has the right to use the name Koriander and that she does not need a court order to do so. Nevertheless, she desires to effect a legal name change, because the common law and business use of Koriander while her legal name, such as on her driver's license, continues to be Rosa Linda Ferner, causes confusion and inconvenience for her and others.[1]
*415 The court is satisfied that the applicant does not harbor any fraudulent or other unlawful purposes. She testified at the hearing that she has used the name Koriander in her work as an artist and has copyrighted some recordings using a shortened version of that name. Her lack of attachment to her maiden or current legal names, together with her attraction to a name that sounds appropriate for her work as an artisan, are the motivation for the desired name change. She did not anticipate, and was not motivated by, the potential confusion that use of a single name might cause. She is willing to accept difficulties for herself and, more important, has a very cooperative attitude with respect to meeting the bureaucratic needs of government agencies and presumably others.
While a trial court has discretion in ruling on a name change, In the Matter of Pirlamarla, 208 N.J. Super. 112, 116, 504 A.2d 1238 (Law Div. 1985); In the Matter of Joseph M., 91 N.J. Super. 296, 297, 219 A.2d 906 (Law Div. 1966), a properly presented request should not be denied because of an individual judge's preferences or speculation about whether the applicant has made a wise decision.
The Appellate Division in Matter of Eck, supra, 245 N.J. Super. at 220, 584 A.2d 859, implicitly admonished trial courts not to allow personal preferences to outweigh an applicant's lawful choice. The applicant in that case desired to change from a male to a female name. The trial court had denied the application on the ground that a female name would mislead potential employers and other members of the public. The Appellate Division reversed and authorized the legal name change. It said:
Judges should be chary about interfering with a person's choice of a first name.... [A] male assuming a female identity in mannerism and dress . .. is ... a matter which is of no concern to the judiciary, and which has no bearing upon the outcome of a simple name change application.
[Id. at 223, 584 A.2d 859.]
Although the application in this case is not as simple, the applicant's motivations in seeking officially to be known by a single *416 name are of concern to the court only insofar as they prove that she has no unlawful or disruptive purpose.
Circumstances of special significance that would militate against the granting of such an application would be an unworthy motive, the possibility of fraud on the public, or the choice of a name that is bizarre, unduly lengthy, ridiculous or offensive to common decency and good taste.
[In the Matter of Joseph M., 91 N.J. Super. at 297-98, 219 A.2d 906].
While adopting a single word name is not the norm, it does not fall into one of the above circumstances warranting denial. Nevertheless, the court must consider whether the public interest overrides the applicant's request.
"At common law, a legal `name' consisted of a given name and of a surname or family name." Petition of Dengler, 246 N.W.2d 758, 760 (N.D. 1976); see In re Ritchie, 159 Cal. App.3d 1070, 1072, 206 Cal. Rptr. 239, 241 (1984). In western culture, people have traditionally used both a given name and a surname.
The court, however, need not blindly follow tradition. In Gubernat v. Deremer, 140 N.J. 120, 657 A.2d 856 (1995), the Supreme Court of this State explored the history behind the western custom in assuming paternal surnames.
The use of surnames is a relatively recent historical practice. "In the early life of all races surnames were unknown, while given names have been used from the most distant times to identify and distinguish a particular individual from his fellows." Smith v. United States Casualty Co., 197 N.Y. 420, 90 N.E. 947, 948 (1910).
[Id. at 126, 657 A.2d 856].
Recognizing that the presumption in favor of children bearing the paternal surname was no longer valid, the Court declared:
But the historical justifications that once supported a tradition in the law for children to bear paternal surnames have been overtaken by society's recognition of full legal equality for women, an equality that is incompatible with continued recognition of a presumption that children must bear the father's surname. That presumption shall no longer apply in this State.
[Id. at 123, 657 A.2d 856].
Of course, the name change statute itself and the common law described previously demonstrate that the law has never presumed that an adult must bear his or her father's surname. More significantly, however, Gubernat v. Deremer instructs this court *417 that adherence to tradition should not overwhelm the personal liberty of individuals to choose a desired name.
The other side of the balance to individual choice, however, is the interest of the public in avoiding confusion in identifying members of this society. In considering that interest, the court has looked to both legal authority and the factual record in this case.
No reported case in New Jersey addresses a request for a name change to a single name. There are, however, New York cases directly on point. In Matter of Miller, 162 Misc.2d 527, 617 N.Y.S.2d 1024, 1026 (N.Y.C.Civ.Ct. 1994), the petitioner applied to change her name legally to "Sena." Her motivations were comparable to those of applicant in this case. Sena believed that the name she had chosen for herself had "unique spiritual and religious importance." Id. 617 N.Y.S.2d at 1025. The New York court denied the application reasoning that a single name would cause too much confusion to society at large. Id. The court said:
While it has been suggested that "confusion is a normal concomitant of any name change," Application of Halligan, 46 A.D.2d [170] at 172, 361 N.Y.S.2d 458, the change sought here is fraught with unusual potential for public confusion and private concern. The use of a single name cannot be viewed as reasonable when it would create confusion in identifying different people, cause disruption of official and business records ... and wreak havoc in an economy that is "largely dependent on credit of easily identifiable persons." Application of Douglas, 304 N.Y.S.2d 558 (1969).
[Matter of Miller, 617 N.Y.S.2d at 1025].
The earlier New York case, Application of Douglas, 60 Misc.2d 1057, 304 N.Y.S.2d 558, 561 (N.Y. Sup. Ct. 1969), used even stronger language when denying an application for a name change to a single name.
The judicial approval of the use of a single name would be retrogression to antiquity, cause havoc and chaos in the proper identification and location of persons in this modern day and era, cause serious disruption of official records and lead to all kinds of complications in our economy, largely dependent on credit of easily identifiable persons. The judicial sanction of single names is as extinct as the Dodo bird.
[Id. 304 N.Y.S.2d at 561].
*418 In neither the Miller nor Douglas opinions, however, can there be discerned what kind of factual record the courts developed in reaching those conclusions.
The record established at the evidentiary hearing in this case does not support the New York courts' conclusions. Today's society does not use only names as a means of identification. Individuals are often identified through numbers: social security number, driver's license number, FBI or State Police criminal numbers for those charged with crimes, and account numbers supplied by individual businesses or financial institutions. Many businesses now use telephone numbers of their customers to create computerized files that can quickly be retrieved for purposes of identification. Furthermore, law enforcement agencies use fingerprints and birth dates, as well as other numbers, as more reliable identifiers of those with criminal records because criminals often use aliases or give incomplete names. The State informed the court at the evidentiary hearing that names are only one of four identifiers that the State Police use for their law enforcement purposes.
In addition, our society has expanded far beyond the small communities or city neighborhoods that constituted the social or commercial circles within which individuals lived and worked in the past. Under those conditions a first name and a surname were usually sufficient to identify an individual. Our population, however, has surpassed the number of names. For many common names, a first name and a surname are not enough to identify an individual. The New Jersey Lawyers Diary, for example, which lists all active attorneys in this state, has a number of examples of identically named attorneys, including some with the same middle initial. Only through other identifiers, such as an address, can they be distinguished.
The New York courts' rationale that a name change to a single name is too confusing because it hinders individual identification would also support denying a name change to an extremely common name such as John Smith or William Jones. Yet, this *419 court would be overstepping its authority to deny an otherwise proper request to change a person's name to a commonly used name.
In the past, courts have been overly protective of the public's interest in avoiding confusion when they have denied name change applications. Besides the male to female name change discussed in the Eck case cited previously, a New York court in the late 1960's denied an applicant's request to change his name from Earl Green to Merwon Abdul Salaam on the ground that adoption of "such a strange and unfamiliar name" would cause too much confusion in our society. Application of Green, 54 Misc.2d 606, 283 N.Y.S.2d 242, 244 (N.Y.C.Civ.Ct. 1967). See also Application of Wing, 4 Misc.2d 840, 157 N.Y.S.2d 333 (N.Y.C.Civ.Ct. 1956) (adult petitioner permitted to adopt Muslim name for religious reasons but application denied for infant daughter on ground that Muslim name would "set her apart and seem strange and foreign to her schoolmates and others"). Our court's today are more sensitive to cultural differences and individual rights.
Based on the certifications presented by the State of New Jersey, a single name may cause some inconvenience to government agencies, in particular, to their computer record keeping and indexing systems. Computers and record keepers, however, need not control individual liberties. This State's computer programmers and record keepers are capable of adjusting their systems to accommodate unusual names. To the credit of the Attorney General of this State, the Division of Law and Public Safety has told this court that the inconvenience caused by this applicant's request is not insurmountable. The Division of Motor Vehicles and other State agencies can adjust their procedures. The Deputy Attorney General also informed the court that the Social Security Administration has the ability to handle a single name. In fact, in Application of Douglas, which was decided some 27 years ago, the New York court stated that the applicant there had obtained a social security number using a single name. 304 N.Y.S.2d at 560. Although no federal agency responded to this *420 application, the court also takes judicial notice that the Internal Revenue Service identifies taxpayers through their social security numbers.
Furthermore, any private entities, such as banks and merchants, can make their own decisions whether they are willing to contract with a person using a single name. If they want the business, they will find ways to identify their accounts. If the record keeping is too difficult and costly, they will decline the business and the applicant will have to do without it. This applicant has been informed about the potential inconveniences that she may face using a single name and is willing to accept them. Indeed, her experience thus far has been that she has not been unduly inconvenienced. The evidence submitted by both applicant and the State does not support a judicial conclusion that the use of a single name will cause "havoc and chaos" with this country's official records and economy.
This court does not mean to suggest that every request for a change to a single name should be routinely granted. Because use of a single name is unusual and potentially disruptive, applications making that request should be carefully reviewed and the applicant should be made aware of the potential disadvantages. The court notes that many name change applications are filed without the services of an attorney, and the court routinely grants unopposed applications without requiring an appearance in court by the applicant. With respect to unusual name changes, however, an evidentiary hearing and live testimony may be the best course for both the court and the applicant. In this case, the court views as important factors that applicant is an adult without dependents, is fully aware of the potential difficulties for herself, and intends to cooperate with public agencies in finding solutions to their record keeping difficulties.
This decision also is not intended to intimate any disagreement with those courts that have denied an application to use a number or a symbol in place of a name. See In re Ritchie, 159 Cal. App.3d 1070, 206 Cal. Rptr. 239 (application to change name to "III" *421 denied); Petition of Dengler, 246 N.W.2d 758 (North Dakota Supreme Court denied application to change name to "1069"); Application of Dengler, 287 N.W.2d 637 (Minn. 1979) (Minnesota Supreme Court denied same applicant's request to change name to "1069"). Different factors counsel against permitting a legal name change to something other than a word recognizable as a name.
The name Koriander, however, does not present insurmountable problems for the public or the applicant. For the reasons stated in this opinion, Rosa Linda Ferner's petition to change her name to Koriander will be granted. If any government agencies or other entities need to do so, they may consider Koriander to be the applicant's surname.
NOTES
[1] Interestingly, applicant testified at the evidentiary hearing that the Division of Motor Vehicles refused to permit her to use her middle name Linda on her driver's license although she was only known by that name and seldom used her first name Rosa. Consequently, her driver's license, which gives her name as Rosa L. Ferner, conforms with DMV requirements but does not clearly identify her with the part of her legal name that identifies her to others who know her.