780 A.2d 579 (2001)
344 N.J. Super. 126
In the Matter of an APPLICATION FOR A CHANGE OF NAME BY: Jill Iris BACHARACH to assume the name: Jill Iris Bacharach-Bordman.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 2001.
Decided August 2, 2001.
*580 James P. Sieradzki argued the cause for appellant (Ros & Sieradzki, attorneys; Mr. Sieradzki, of counsel and on the brief).
Harold J. Cassidy and Robert W. Ash, attorneys for amicus curiae The American Center For Law and Justice (Mr. Ash, on the brief).
Hartsough Kenny & Chase, attorneys for amicus curiae Concerned Women For America (Mr. Sullivan, of counsel and on the brief).
Before Judges STERN, COLLESTER and FALL.
The opinion of the court was delivered by COLLESTER, J.A.D.
Appellant Jill Iris Bacharach appeals from a judgment of the Law Division, Essex County, denying her application for a change of name pursuant to N.J.S.A. 2A:52-1. We reverse.
On May 26, 2000, plaintiff filed her verified complaint in compliance with R. 4:72-1 alleging in pertinent part the following:
5. There are no pending criminal charges against plaintiff. Plaintiff has never been convicted of a crime.
6. Plaintiff has never been bankrupt, and no bankruptcy or insolvency proceedings have ever been instituted affecting her.
7. There are no judgments, unsatisfied of record against the plaintiff and no suits are pending against her.
8. This application is not being made with the intent to avoid creditors or criminal prosecution or for other fraudulent purposes.
9. No previous application has ever been made by the petitioner for leave to assume another name.
10. The petitioner desires to assume the name of: JILL IRIS BACHARACH-BORDMAN.
11. The reason the petitioner desires to assume this new name is as follows:
(a) Plaintiff wishes to assume the name of her life-partner as part of her own.
An order was entered fixing a date for a hearing on the matter pursuant to R. 4:72-3. A copy of the order was published in the Star Ledger newspaper, and copies were also sent to the Essex County Prosecutor and the New Jersey Attorney General. A criminal background check disclosed no criminal record, and no objection to the name change was received from the County Prosecutor, Attorney General or from any member of the public.
Appellant testified in accordance with her complaint at the hearing, adding that her partner consented to appellant's assumption of her surname. The hearing judge expressed concern that the name change would give the appearance of approval of a same-sex marriage.
The point is that this Court is particularly concerned with an impression or an appearance. If I grant such a petitionera petition, rather, to the outside world, which in this case would be the immediate neighborhood or their social contact, their work related, their church, other places of worship, people in the apartment, where they go shopping and so forth, bank accounts, social security, credit cards and so forth, because if it becomesif I grant it, it would be legal *581 and then we would have a union of some sort between the two, representing to all people that there's some sort of a union here; there's some sort of a marriage here; there's some sort of a civil contract to represent to these people in general that they're together. And that is not legal as of today.
At the conclusion of the proofs the trial judge denied the name change based on his perception of the law and public policy of the State against recognition of same-sex marriage.
... the court itself may interpose an objection to said petition if it determines that there exists a lawful objection that overrides the petitioner's right to a name change, which I have done maybe at great length.
It has been held that names should not be changed for trivial, capricious, or otherreasons that a change of name will be refused if the court entertains a serious doubt as to the propriety of granting it. In re Bonnie Lee Daniels [Lawrence], 128 N.J.Super. 312 [319 A.2d 793 (1974)], in addition or moreover, a judge may deny such requests if it is based upon "an unworthy motive," the possibility of fraud on the public, fraudulent or criminal purposes or that there is an overriding social policy, which militates against the change and I refer you again to the In re [Joseph M.] case.
Before me today we know what the posture of the laws are in this State of New Jersey. It does not recognize same sex marriages, unions; unlike the State of Vermont, which has not [sic] recognized unions. In fact, I read in a newspaper somewhere where many people are going there, even out-of-staters, to have a union. That's Vermont, this is New Jersey. I refer you to M.T. vs. J.T. at 140 N.J.Super. at 77 [355 A.2d 204 (1976)], stating a lawful marriage requires the performance of a ceremonial marriage of two persons of the opposite sex. Simply means a male and a female.
Despite the winds of change that are going on and possibly will get stronger as the applicant hopes down the road, that this understanding of amarriage is almost universal, that is, the same sex marriage. There is no doubt in my mind that this state follows the overwhelming majority that it is unlawful at this stage. If this Court would give even the slightest imprimatur of any legitimacy to this type of arrangement, life term partners, it would seem to me that it is against public policy to allow that, or to even allow a perception, appearance or a recognizable union. It it's also, as far as this Court is concerned, against public policy to even allow the petitioner and the lifetime partner to [hold] themselves out as being married, with the perception of marriage, or the appearance of marriage, which is completely in contravention of the law as it stands today.
As the applicant has stated, there may be a hope down the road. There may be some Legislative action. There may be some petition. There may be some referendum. Whatever it may take for the possibility that same sex marriage may be unionized, or a civil type of understanding, or for that matter even recognized as marriages between male and female, but unfortunately, that is not the state of the law today. And for all these reasons, for the colloquy that exists on the record, for those cases that I've cited, for the answers that were given here toby the applicant, the Court comes to the conclusion that the application for change of name as it stands before me today is hereby denied.
*582 Following appellant's appeal we have permitted amicus curiae filing of briefs by Concerned Woman For America and the American Center for Law and Justice in opposition to her legal arguments.
It is well-settled that an adult can legally and properly change his or her name at will and without need of judicial approval simply by using the desired name in ordinary life so long as the adopted name is not used for a criminal or fraudulent purpose. Cimiluca v. Cimiluca, 245 N.J.Super. 149, 151, 584 A.2d 823 (App. Div.1990); Application of Pirlamarla, 208 N.J.Super. 112, 115, 504 A.2d 1238 (Law Div.1985); Application of Lawrence, 133 N.J.Super. 408, 411, 337 A.2d 49 (App.Div. 1975); see also McGarvey v. Atl. City & Shore R.R. Co., 123 N.J.L. 281, 8 A.2d 385 (E. & A.1939); State v. Librizzi, 14 N.J. Misc. 904, 906, 188 A. 511 (Sup.Ct.1936).
The New Jersey change of name statute, N.J.S.A. 2A:52-1 to -4, provides an additional method for a change of name and provides a definitive and swift procedure for public recordation. Lawrence, supra, 133 N.J.Super. at 411, 337 A.2d 49. It is construed in light of common law and not in derogation of it. Egner v. Egner, 133 N.J.Super. 403, 406, 337 A.2d 46 (App. Div.1975). The statute reads as follows:
Any person may institute an action in Superior Court, for authority to assume another name. The complaint for a change of name shall be accompanied by a sworn affidavit stating the applicant's name, date of birth, social security number, whether or not the applicant has ever been convicted of a crime, and whether any criminal charges are pending against him and, if such convictions or pending charges exist, shall provide such details in connection therewith sufficient to readily identify the matter referred to. The sworn affidavit shall also recite that the action for a change of name is not being instituted for purposes of avoiding or obstructing criminal prosecution or for avoiding creditors or perpetrating a criminal or civil fraud. If criminal charges are pending, the applicant shall serve a copy of the complaint and affidavit upon any State or county prosecuting authority responsible for the prosecution of any pending charges. A person commits a crime of the fourth degree if he knowingly gives or causes to be given false information under this section.
Consistent with the flexibility provided at common law, N.J.S.A. 2A:52-1 has been interpreted to give broad judicial discretion in favor of granting a change of name. See e.g., Application of Ferner, 295 N.J.Super. 409, 685 A.2d 78 (Law Div. 1996) (permitting change of full name to single name "Koriander"); Application of Pirlamarla, supra, 208 N.J.Super. at 115, 504 A.2d 1238 (permitting resident alien to adopt husband's name); In re Jackson Name Change, 177 N.J.Super. 591, 427 A.2d 139 (Law Div.1981) (holding a convicted criminal serving a custodial sentence may adopt Islamic name).
Historically, judicial discretion also permits rejection of a name change application for other reasons than fraudulent or criminal purpose. See generally, 79 ALR 3d 562. While the hearing judge in In re Joseph M., 91 N.J.Super. 296, 219 A.2d 906 (Cty.Ct.1966) granted the application of a child born out of wedlock for a change of surname to his putative father, he added,
Circumstances of special significance that would militate against the granting of such an application would be an unworthy motive, the possibility of fraud on the public, or the choice of a name that is bizarre, unduly lengthy, ridiculous, or offensive to common decency and good taste.

*583 [Id. at 297-98, 219 A.2d 906.]
There are few reported cases in which a court has denied a requested name change. One was In re Bonnie Lee Daniels Lawrence, 128 N.J.Super. 312, 319 A.2d 793 (Cty.Ct.1974), in which the hearing judge denied the application of a married woman seeking to resume use of her maiden name as her sole legal name even though no objection was filed and there were no indications of a fraudulent purpose. The reason given was that, "This court has great concern for the stability of the family and the marriage." Id. at 327, 319 A.2d 793. On appeal we reversed, holding in effect that a request for a name change should not be denied simply because a judge disputes the wisdom of the request or disagrees with the reason for the change based on his or her personal views or philosophy. Application of Lawrence, supra, 133 N.J.Super. at 413-14, 337 A.2d 49.
Subsequently, In re Eck, 245 N.J.Super. 220, 584 A.2d 859 (App.Div.1991) held that it was error for the hearing judge to deny an application by a transsexual from a male to a female name. The expressed concern of the trial judge was that it was "inherently fraudulent" for a male to assume a female name for the purpose of representing himself as a female to society because it would mislead potential employers and other members of the public. We remarked,
we perceive that the judge was concerned about a male assuming a female identity in mannerism and dress. That is an accomplished fact in this case, a matter which is of no concern to the judiciary, and which has no bearing upon the outcome of a simple name change application.

[Id. at 220, 584 A.2d 859.]
We acknowledge the exercise of judicial discretion in denying a name change in a proper case. A hearing judge is not required to rubber stamp by judicial order a change of name to one that is obscene, ridiculous or racist. See e.g., Lee v. Ventura County Super. Ct., 9 Cal.App. 4th 510, 11 Cal.Rptr.2d 763 (1992) (holding than while an African American educator had a common law right to adopt a name containing a racial epithet universally considered offensive and conducive to violence, the trial judge properly denied the petition under the governing statute). However, the exercise of discretion to deny change of name is contrary to the common law and statutory policy in favor of granting such relief. Substantial reasons must exist for the denial. See, Eck, supra, 245 N.J.Super. at 223, 584 A.2d 859; Ferner, supra, 295 N.J.Super. at 415, 685 A.2d 78; see generally, 79 ALR 3rd 562.
Amicus curiae argue in the instant case that there are substantial public policy reasons for denial of the petition because of an overriding social policy against a lesbian adopting the name of her partner. They cited in support the unpublished Ohio decision of In re Bicknell. In that case two women had been partnered for nine years, and one was expecting a child conceived by artificial insemination. They both sought to change their names to a name comprised of some of the letters of their last names. The trial judge denied the petitions because the relief sought would give "an aura of propriety and official sanction" to their cohabitation. A divided Ohio appellate court affirmed, noting that the Ohio statute required an applicant to show "reasonable and proper cause" for a name change and finding that the trial judge did not abuse discretion because "sanctioning the use of the same surname by two unmarried cohabitants is against Ohio's public policy promoting marriage."
As an unpublished opinion, Bicknell lacks authority. R. 1:36-3; see also, Oh. St. Rpt. Opinions R. 2(G). It is also distinguishable *584 since the Ohio statute places a "reasonable and proper cause" burden on the name change applicant whereas N.J.S.A. 2A:52-1 requires only a sworn statement that a change of name is not sought "for purposes of avoiding creditors or perpetrating a criminal or civil fraud." Despite the argument of amicus curiae, strict statutory construction restrains us from reading this additional requirement into the statute. Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613, 725 A.2d 1104 (1999); Bd. of Educ. v. Neptune Twsp. Educ. Ass'n, 144 N.J. 16, 25, 675 A.2d 611 (1996); State v. Butler, 89 N.J. 220, 226, 445 A.2d 399 (1982).
We also disagree with the rationale of Bicknell as applied to the instant case. Proper statutory construction of N.J.S.A. 2A:52-1 to -4 should not permit a judge to deny a name change based on a personal view of what is or should be the public policy of this state. See, Eck, supra, 245 N.J.Super. at 223, 584 A.2d 859. Judges have no monopoly on wisdom, no clairvoyance into the public mind and no right to impose personal views or values on the citizenry of our state. See Rutgers Council of AAUP v. Rutgers, The State University, 298 N.J.Super. 442, 463-64, 689 A.2d 828 (App.Div.1997) (Baime, JAD concurring), certif. denied, 153 N.J. 48, 707 A.2d 151 (1998).
Furthermore, to the extent that public policy may be gleaned from the actions of our legislature and the decisions of our Supreme Court, we find no basis for declining a name change which would enable an applicant to adopt a hyphenated surname to include the name of her same-sex partner.
While amicus curiae argue that the name change sought would effect "a form of legitimacy" for a same-sex relationship contrary to the public policy of this state, the "legitimacy" of such relationships is well-established by both statutory and decisional law. The Law Against Discrimination specifically protects persons from discrimination based on sexual orientation. N.J.S.A. 10:5-1. The Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17, affords the same protection to victims in a same-sex relationship as in other relationships covered by the Act. Children may be adopted by same-sex partners. In re Adoption of Two Children by H.N.R., 285 N.J.Super. 1, 6, 666 A.2d 535 (App.Div.1995); In re Adoption of Child by J.M.G., 267 N.J.Super. 622, 625-26, 632 A.2d 550 (Ch.Div.1993). A same-sex former domestic partner of a biological mother was considered a "psychological parent" so as to entitle her to visitation. V.C. v. M.J.B., 163 N.J. 200, 224, 748 A.2d 539 (2000). See generally, Note, Family Law Issues Involving Children, 102 Harv. L.Rev. 1629 (1989). Therefore, even though we deem public policy judgments as essentially irrelevant to application for change of name, we find nothing inconsistent with the application filed by appellant with the stated public policy of New Jersey.
Amicus curiae correctly state that same-sex marriages are not lawful in New Jersey. Rutgers Council of AAUP, supra, 298 N.J.Super. at 455-62, 689 A.2d 828. From that fact it is argued that appellant is really seeking recognition of a same-sex marriage, using the change of name statute as a Trojan horse in a political agenda designed in derogation of values inherent in heterosexual marriage. It is argued that to grant the application would be the beginning of a "slippery slope" toward governmental recognition of same-sex marriage.
It is unnecessary and unwise for us to comment on or join in such a discussion in this case. We simply note that appellant did not raise the issue of same-sex marriage. *585 The hearing judge did. While appellant said she wished she could be legally married to her partner, she understood that this was not possible under New Jersey law and was not pertinent to her name change application. We agree that same-sex marriage is not an issue in this case. The arguments equating it with the proposed name change are specious.
We underscore that the hearing judge did not base his decision on any disapproval of appellant or her same-sex relationship. Rather he found that there was an inappropriate purpose to the application and a potential fraud upon the public because the name change might give the misperception that New Jersey recognizes same-sex marriages as lawful.
This concern is misconceived. Appellant and her partner can exchange rings, proclaim devotion in a public or private ceremony, call their relationship a marriage, use the same surname, adopt and rear children. All these actions may be taken in full public view. None are offensive to the laws or stated policies of this state. To deny the applicant a statutory change of a portion of her surname to that of her same-sex partner on the hypothesis that some members of the public may be misled about the legal status of same-sex marriages in New Jersey is farfetched and inherently discriminatory.
In response to the hearing judge's questions as to the reasons she sought to adopt her partner's surname, the appellant said
What it will do for me is it will give me a more satisfying feeling that I have cultivated family ... I am simply saying that I am committed to somebody in my life, that I want to express that commitment through adding a name to my name so that I can have a more solid ... solid feeling of, this is my family. The two of us are family.
There is no fraudulent or criminal purpose or any other substantial reason to deny appellant the relief she seeks. We hold that the denial of her request was a misapplication of judicial discretion, and we direct that the hearing judge execute an order granting the application authorizing Jill Iris Bacharach to assume the name of Jill Iris Bacharach Bordman.
Reversed.