OPINION OF THE COURT
Paul G. Feinman, J.
Petitioner seeks leave pursuant to article 6 of the Civil Rights Law to change her surname to that of her same-sex life partner. *414 Her partner has consented to the application before a notary-public. The court’s research does not reveal any published New York cases directly on point. For the reasons stated below, the petition is granted.
Under the common law, a person can simply assume any name, absent fraud or an interference with the rights of others (Matter of Anonymous, 57 Misc 2d 813, 814 [Civ Ct, NY County 1968]). Article 6 of the Civil Rights Law provides a formal procedure for changing a name, which provides the advantages of being “speedy, definite and a matter of record” (Smith v United States Cas. Co., 197 NY 420, 429 [1910]). Article 6 allows both adults and infants to petition to change their names, the latter generally through a parent or guardian (Civil Rights Law § 60). Pursuant to section 61, the petition must include the name, date of birth, place of birth, age and residence of the individual whose name is proposed to be changed and the name which he or she proposes to assume. It must also specify whether the individual has been convicted of a crime or adjudicated a bankrupt, and whether there are any judgments or liens of record or actions or proceedings in which the petitioner is a party. In addition, the application must have attached a birth certificate or equivalent if the individual was born in the State of New York. Where the court is satisfied that the petitioner’s application is true and that there is no “reasonable objection to the change of name proposed,” the court will issue an order authorizing the petitioner to assume the proposed name, and direct that notice of the change be published (Civil Rights Law § 63).
The statute requires that the court be assured that the desired name change is not intended to defraud or misrepresent, nor interfere with the rights of others (Matter of J.O.T., 120 Misc 2d 817, 818 [Civ Ct, Kings County 1983]). Petitioner avers that she has never been married, has no children either natural or adoptive and there are no orders directing her to make child support payments in any court; she has never been convicted of a crime or adjudicated a bankrupt; and there are no judgments or liens against her, nor are there any proceedings pending to which she is a party. The grounds on which she makes her application for a change of name are that she has lived with her partner Zosia Zaks for nearly a year, and they plan to file a domestic partnership agreement and start a family. She wishes to assume the same last name as her partner “to reflect their commitment to each other.” In support of her application, she includes an affidavit from her partner, Zosia Zaks, requesting the court grant petitioner’s application to assume her name.
*415 Perhaps because marital and parental status are often synonymous for access to many rights, privileges, and benefits in our society, the published cases on name changes often focus on whether the granting of the petition will lead to confusion regarding the marital or parental status of the individual. The decisional law in this state concerning name changes intended to reflect familial relationships with unmarried individuals include the application of a mother to change the surname of her child from her name to that of the man with whom they both lived (Matter of Sakaris, 160 Misc 2d 657 [Civ Ct, Richmond County 1993]), and a woman who wished to change her last name to that of her differently-sexed lover whom she was “not free to marry.” (Matter of Linda Ann A., 126 Misc 2d 43, 43 [Sup Ct, Queens County 1984].) In Sakaris, the application was denied on the ground that although the mother had two children in common with the man, both of whom which bore his last name, there were no immediate plans either to marry or for the man to adopt the child. The Sakaris court held that “as a matter of public policy [the court] cannot condone or assist in this life-style by its approval of a name change to give the appearance of a family.” (Id. at 665.) In Linda Ann A., the court denied the application because its approval would have sanctioned a presumably adulterous and therefore illegal relationship. Moreover, the court held that even if the relationship were not adulterous, approving the petition would allow the applicant to hold herself out as the wife of her lover and “would tend to mislead and confuse those dealing with the couple who might be unaware of the true relationship” (id. at 44-45). A third case, somewhat closer to the issue at hand, involved the application of a mother of a child born through alternative insemination who wished to change her son’s name to that of her “female friend” with whom she had been living for several years (Matter of A.D., 129 Misc 2d 550 [Sup Ct, Suffolk County 1985]). Although the “friend” affirmed in writing that the decision to have a child had been a mutual decision, and that she wanted to become a “stepmother” to the child, although not to adopt the child, the Matter of A.D. court found that although the change of name was of importance to the two women in showing their status as a family, it was not in the best interests of the child as “it is improper to utilize a change of name proceeding, even by inference, to establish status as a ‘parent’ one other than the natural parent” (at 552). Finally, in a more recent case, the court denied an application by a mother to change the name of *416 her infant son to the son’s putative father, because this is an improper way to acknowledge paternity or to change a child’s birth certificate (Matter of Conde, 186 Misc 2d 785 [Civ Ct, Kings County 2000]). The Conde court noted a name change without a declaration of paternity or other judicial determination of parentage gives a child none of the benefits such as child support or inheritance rights that flow from having a legally recognized parent. The court reasoned that without a determination of the status, it is not in the best interests of the child to change his or her name.
The petition before this court does not involve children. Rather, it concerns an adult who wishes to change her surname to that of her life partner, and that individual has consented. The court need not, therefore, concern itself with factors other than those of fraud, intentional misrepresentation or interference with the rights of others.
In New Jersey, the courts recently addressed a case very similar to that before this court. There, a woman petitioned to change her last name to include the surname of her same-sex life partner. The lower court denied her application on the ground that allowing the change of name would give the appearance of approving of same-sex marriage, something not allowed under New Jersey state law. On appeal, the intermediate appellate court reversed the lower court’s ruling in a lengthy opinion, finding that because there was no intent to defraud and no criminal purposes, the trial court had no discretion to decide what New Jersey public policy was or should be (In re Application of Bacharach, 344 NJ Super 126, 129, 780 A2d 579, 581 [Super Ct App Div 2001]). It noted that as it is, the women have the right to exchange rings, declare vows in a ceremony, call their relationship a marriage, use the same surname, and adopt and rear children. Under the New Jersey antidiscrimination law, discrimination on the basis of sexual orientation is forbidden. In addition, New Jersey allows same-sex partners to adopt children and allows visitation rights to same-sex former domestic partners. Nonetheless, the court stated that these statutes were “essentially irrelevant” when addressing an application for a name change, although they demonstrate that the granting of the petitioner’s application would not be inconsistent with stated public policy (id. 344 NJ Super at 135, 780 A2d at 584). Furthermore, it held that the lower court’s hypothesis that some members of the public would be misled about the status of same-sex marriages in New Jersey *417 was “farfetched and inherently discriminatory.” (Id. 344 NJ Super at 136, 780 A2d at 585.) Courts in Ohio and Pennsylvania have recently considered similar cases and reasoned similarly (see, In re Bicknell, 96 Ohio St 3d 76, 771 NE2d 846 [2002] [granting application of two women to assume same new last name]; In re Miller, 2003 Pa Super 197, 824 A2d 1207 [2003] [granting woman right to assume surname of her life companion]).
In New York, as in our sister state across the Hudson River, New Jersey, public policy is squarely on the side of outlawing discrimination on the basis of sexual orientation (Executive Law § 291 [1]; §§ 296, 296-a). Thus, assuming that public policy is an appropriate consideration in this application, the granting of it would be consistent with the public policy of the State of New York. However, as noted in the Bacharach decision, an application to change a name is not to be decided based on public policy grounds, but on a much narrower basis.
This point was eloquently underscored by another judge of this court in a recent decision concerning a name change involving a different context — an individual of transgendered experience. (Matter of Guido, 1 Misc 3d 825 [Civ Ct, NY County 2003].) In Guido the court originally denied an application to change the petitioner’s given name from one traditionally associated by many in American society with a male gendered individual to one traditionally associated with a female gendered individual until such time as the petitioner had completed gender reassignment surgery and obtained a divorce. Upon renewal, the Guido court concluded that its initial concern with whether the applicant had undergone gender reassignment surgery, and whether a divorce had been obtained from the applicant’s wife, were matters “outside the scope of the court’s jurisdiction and beyond the scope of the inquiry necessary to avoid lending the court’s assistance to fraud, deception or other interference with the rights of third parties.” (Id. at 827.) The Guido court had initially reasoned that because same-sex marriages are not recognized in New York State, it would be “ ‘inconsistent for this court to grant the relief requested’.” (Id. at 826.) In reversing itself, the Guido court concluded that its initial concerns were “misplaced, as they anticipate questions that simply are not raised by this application.” (Id. at 828.) It further stated that “there is no reason — and no legal basis — for the courts to appoint themselves the guardians of orthodoxy in such matters.” (Id. at 828.) As the court noted, the petitioner did not ask *418 the court to declare that his sex or gender had been changed, but only to sanction his use of his chosen name. One learned legal commentator has described this approach as “pragmatic.”[2] The relevance of Guido to the facts here is its teaching that the role of the court in a name change is a limited one and not to superimpose its view of public policy.
Here, as in Guido, the court finds that its scope of review of the petition is narrow. Finding no intent to defraud or misrepresent, and no interference with the rights of others, this court grants the petitioner’s application to change her name, and as set forth in its order of November 25, 2003, the petitioner shall be known, upon publication and proof of compliance, as Gena Michele Zaks.

. Professor Arthur S. Leonard, Transgender Woman Gets Name Change, Gay City News, Nov. 6-12, 2003, at 9 (Guido decision adopts “pragmatic” approach that met “the immediate needs” of the petitioner but refused to recognize an actual change of sex; one of the “most sharply argued questions” facing the courts as well as society as a whole is whether a change of sex can be legally recognized in the absence of gender-reassignment surgery, based solely on body changes induced by hormone treatments).