37 A.3d 521 (2012)
424 N.J. Super. 231
In the Matter of Application of Xiangjing ZHAN to Change the Name of Honghong Zhan, a Minor, to Michelle Honghong Zhan.
No. A-6113-10T1
Superior Court of New Jersey, Appellate Division.
Argued January 18, 2012.
Decided February 14, 2012.
*523 Susanne Peticolas, Newark, argued the cause for appellant (Gibbons P.C. attorneys; Ms. Peticolas, on the brief).
Before Judges PAYNE, REISNER and HAYDEN.
The opinion of the court was delivered by
REISNER, J.A.D.
In this appeal, we decide whether a permanent resident alien may obtain a legal change of name pursuant to N.J.S.A. 2A:52-1 to -4 (name change statute), or whether the statute limits that relief to United States citizens. We hold that the statutory right to obtain a legal name change is not limited to United States citizens and, therefore, we reverse the trial court order dismissing appellant's application.

I
Appellant and his minor daughter are lawful permanent resident aliens. Appellant filed a verified complaint seeking to change his daughter's first name from "Honghong" to "Michelle." See R. 4:72-2 (authorizing parents to commence name change actions for their minor children without appointment of a guardian ad litem). The trial court dismissed the complaint because the minor was "not a U.S. citizen." Distinguishing Application of Pirlamarla, 208 N.J.Super. 112, 504 A.2d 1238 (Law Div.1985), which held that the name change statute applied to permanent residents as well as citizens, the judge reasoned that Pirlamarla was a "pre-9/11 case." Without citing any specific statutory provision or case law, the judge opined that the federal "Immigration and Naturalization Control Act" pre-empted state law on the issue of name changes, and stated his view that for security reasons, "[t]he Country needs to identify who [is] here under the names that they have."

II
On this appeal, appellant challenges the trial court's decision as contrary to the name change statute, a misconstruction of federal law, and a violation of constitutional Equal Protection and Due Process principles. Because we agree with appellant's statutory arguments, we need not address the constitutional issues.

A
The common law allows name changes without judicial approval and without a public record of the change. Absent a criminal or fraudulent purpose, an adult can "legally and properly change his or her name at will and without need of judicial approval simply by using the desired name in ordinary life." Matter of Bacharach, 344 N.J.Super. 126, 130, 780 A.2d 579 (App.Div.2001). The name change statute provides a more formal means to adopt a new name and "provides a definitive and swift procedure for public recordation." Id. at 130-31, 780 A.2d 579.[1] However, the statute is to be construed in light of the common law and does not abrogate it. Id. at 131, 780 A.2d 579; Egner v. Egner, 133 N.J.Super. 403, 406, 337 A.2d 46 (App.Div.1975); Application of Lawrence, 133 N.J.Super. 408, 411, 337 A.2d 49 (App.Div.1975).
*524 We review the trial court's decision for abuse of discretion, but because the denial of an application for a name change "is contrary to the common law and statutory policy in favor of granting such relief," the court must have "[s]ubstantial reasons" to deny an application. Bacharach, supra, 344 N.J.Super. at 133, 780 A.2d 579. Apart from attempted crime or fraud, we have previously approved very limited bases for denying a statutory name change application. For example, a court need not approve a change to an obscene name. See Bacharach, supra, 344 N.J.Super. at 132, 780 A.2d 579; In re Application of M., 91 N.J.Super. 296, 298, 219 A.2d 906 (Cty.Ct. 1966). However, a judge may not deny a name change application "based on his or her personal views or philosophy." Bacharach, supra, 344 N.J.Super. at 132, 780 A.2d 579; (citing Application of Lawrence, supra, 133 N.J.Super. at 413-14, 337 A.2d 49). In Bacharach, a woman applied for permission to take the surname of her same-sex partner. Id. at 128, 780 A.2d 579. We reversed the trial court's decision to deny the application based on its view that granting the application would be contrary to public policy. Id. at 136, 780 A.2d 579.
Other cases have likewise rejected an assortment of policy-based or philosophical objections to individual name changes, in favor of the common law and legislative policies allowing persons to choose their own names. See Matter of Eck, 245 N.J.Super. 220, 584 A.2d 859 (App.Div. 1991) (finding that absent fraud or other improper purposes, a male applicant was free to adopt a traditionally "female" name); Application of Ferner, 295 N.J.Super. 409, 685 A.2d 78 (Law Div.1996) (applicant was permitted to change her full name to a single name); In the Matter of Jackson, 177 N.J.Super. 591, 593, 427 A.2d 139 (Law Div.1981) (permitting a prison inmate to take an Islamic name, based on First Amendment principles and "the general rule that a person may call himself by whatever name he desires except for fraudulent or criminal purposes").
Against that background, we examine the text of the name change statute. By its terms, the statute permits application by "any person"[2] and does not limit relief to citizens. The statute requires disclosure of criminal convictions or pending criminal charges, and requires a certification that the action is not being filed to avoid creditors or perpetrate a fraud. But it does not address the applicant's immigration status. In pertinent part, the statute reads:

Any person may institute an action in Superior Court, for authority to assume another name. The complaint for a change of name shall be accompanied by a sworn affidavit stating the applicant's name, date of birth, social security number, whether or not the applicant has ever been convicted of a crime, and whether any criminal charges are pending against him and, if such convictions or pending charges exist, shall provide such details in connection therewith sufficient to readily identify the matter referred to. The sworn affidavit shall also recite that the action for a change of name is not being instituted for purposes of avoiding or obstructing criminal prosecution or for avoiding creditors or perpetrating a criminal or civil fraud. If criminal charges are pending, the applicant shall serve a copy of the complaint and affidavit upon any State or county prosecuting authority responsible for the prosecution of any *525 pending charges. A person commits a crime of the fourth degree if he knowingly gives or causes to be given false information under this section.
[N.J.S.A. 2A:52-1 (emphasis added).]
The applicable Court Rule concerning name change applications also does not address the citizenship of applicants. See R. 4:72-1 to -4.
Ordinarily, we interpret a statute in accordance with its plain meaning, ascribing "to the statutory words" their ordinary significance. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). The term "any person" is clearly broader than the term "citizen." For example, in Department of Labor and Industry v. Cruz, 45 N.J. 372, 212 A.2d 545 (1965), the Court construed the amendment of a civil rights statute, N.J.S.A. 10:2-1, as broadening its protections to cover non-citizens:
The elimination of "any citizen of the State of New Jersey" and the substitution of "any person" reveals the intention to prohibit discrimination of the nature described against aliens, as well as citizens in the hiring of employees on [public works] projects.
[Id. at 380, 212 A.2d 545.]
If the Legislature intended the name change statute to apply only to "citizens," it would have said so, as it has in other statutes. For example, N.J.S.A. 30:11-23 specifically requires applicants for nursing home licenses to be United States citizens or persons who have declared their intention to become citizens. We find no basis in the statutory language or in its prior construction in case law to conclude that the name change statute applies only to United States citizens.
In Pirlamarla, supra, 208 N.J.Super. at 115-16, 504 A.2d 1238, the court construed the term "any person" to include a permanent resident alien seeking a name change. In that case, the applicant sought to change her name from "Pirlamarla" to "Gupta," because the latter name was shorter and easier to spell and pronounce. Id. at 114, 504 A.2d 1238. She also applied to change her children's name to Gupta so that all family members would share the same last name. Ibid. Relying on Cruz, as well as the plain language of the name change statute, the court concluded that "any person" included "a lawful resident alien." Id. at 115-16, 504 A.2d 1238. The court noted the importance of the name change to the applicant:
Most immigrants enter the United States with some measure of confidence that their lives will be better in our great country. To be fettered by an unwanted name would substantially interfere with this petitioner's ability to experience the legitimate blessings of freedom. This is especially unjustifiable because there is no statutory obstacle to a favorable disposition of her application.
[Id. at 117, 504 A.2d 1238.]
We note as well that other jurisdictions have construed their name change statutes to apply to non-citizens. In Matter of M.L. Novogorodskaya, 104 Misc.2d 1006, 429 N.Y.S.2d 387 (Civ.Ct.1980), an "alien from Russia," who had refugee status, applied for a name change, explaining to the court that the Soviet government had forced her to assume the surname "Novogorodskaya," which referred to her ethnic background. Id. at 388. Like New Jersey's legislation, the New York name change statute made no mention of a citizenship requirement. New York Civil Rights Law § 60. Based on the absence of such a requirement, the court concluded that "any person, including an alien, should be allowed to change his name in good faith as he desires, provided such change should not violate any statutory provision *526 or overriding public policy." Ibid. In granting the application, the court required the applicant to promptly serve a copy of the order of name change on the Immigration and Naturalization Service. Ibid. See also Application of Lipschutz, 178 Misc. 113, 32 N.Y.S.2d 264 (Sup.Ct. 1941); In re Talat, 19 Pa. D. & C. 498, 500 (Common Pleas Ct.1933) ("Inasmuch as there is nothing in the said [Pennsylvania name change] act or in the general law to exclude a resident alien from its benefits, the petitioner is entitled to have his petition for change of name granted.").
In a more recent case, filed after September 11, 2001, a South African applicant did not provide proof of her immigration status, or of her intent to remain in the United States for any period of time, and did not certify that if the application was granted she would advise the appropriate authorities in the United States and South Africa of the name change. In re Mohomed, 3 Misc.3d 402, 775 N.Y.S.2d 488 (Sup.Ct.2004). The New York court recognized the right of a non-citizen to apply for a name change, but due to concerns about possible fraud in the circumstances of that case, the court dismissed the petition without prejudice, pending the applicant's submitting "a properly supported petition." Id. at 490. See also Matter of Boquin, 24 Misc.3d 473, 875 N.Y.S.2d 788 (Sup.Ct.2009).
Considering the language of the New Jersey name change statute, as well as precedent from our own state and other jurisdictions, we conclude that relief under the name change statute is not limited to citizens.

B
We also find no basis to conclude that federal law has preempted state law in this area or that allowing permanent resident aliens to change their names would present a risk to national security. To the contrary, using the statutory process, as opposed to the informal common law process, ensures that there will be a public record of the name change. Bacharach, supra, 344 N.J.Super. at 131, 780 A.2d 579. And, as discussed below, federal law requires a permanent resident alien to report a name change to the Department of Homeland Security.
There is little federal law on the issue of immigrants' name changes. Federal immigration statutes permit both state and federal courts to administer the oath of citizenship, 8 U.S.C.A. § 1421(b)(5), and as part of that process, the court may grant an application to change a new citizen's name. 8 U.S.C.A. § 1447(e). See N.J.S.A. 2A:53-1 (giving the Superior Court jurisdiction over naturalization proceedings); N.J.S.A. 2A:52-4b (recording of name changes made during naturalization proceedings). However, research reveals no federal statute or regulation prohibiting a permanent resident alien from obtaining a name change or prohibiting state courts from granting such relief. In particular, neither the Immigration and Naturalization Act, 8 U.S.C.A. §§ 1101 to 1701, nor the Real ID Act of 2005, prohibits such name changes.[3]
To the contrary, publications issued by the United States Department of Homeland Security, U.S. Citizenship and *527 Immigration Services (USCIS) clearly anticipate that permanent resident aliens will obtain legal name changes.[4] For example, USCIS requires a permanent resident alien who obtains a name change, either through a court proceeding or by marriage, to apply for a new permanent resident card (green card). The instructions for the federal I-90 form (Application to Replace a Permanent Resident Card), provide:
If your name has changed since the issuance of your Permanent Resident Card ... [s]ubmit a copy of the original court order reflecting your name or a copy of your original marriage certificate, divorce decree, ... or applicable court documents.... A legal name change document submitted as evidence of a name change must have been registered with the proper civil authority. [Form I-90 Instructions (Rev.11/23/10)Y.]
Likewise, question 2 on the I-90 form asks "Has your name legally changed since the issuance of your Permanent Resident Card?" Under "[r]eason for application" the form lists "[m]y name ... has been legally changed since issuance of my existing card." Form I-90 (Rev. 11/23/10)Y at 2.[5] Consequently, we find no basis to conclude that New Jersey's name change statute is preempted by federal law.
Given the absence of support for his decision in state or federal law, we are persuaded that the trial judge mistakenly exercised his discretion in dismissing appellant's application. See Bacharach, supra, 344 N.J.Super. at 136, 780 A.2d 579. We therefore reverse the July 21, 2011 order dismissing the verified complaint, and we remand this matter to the trial court to consider the application on the merits. If appellant did not provide documentary proof of his daughter's immigration status with the verified complaint, he should supplement the application with that evidence. And, to ensure consistency with federal immigration policy, any order granting the application should direct appellant to promptly notify federal immigration authorities of the name change in the manner required by federal law. See Pirlamarla, supra, 208 N.J.Super. at 117-18, 504 A.2d 1238; Novogorodskaya, supra, 429 N.Y.S.2d at 388.
Reversed and remanded.
NOTES
[1] A separate statute, not at issue here, permits a party to adopt a new surname as part of an action for divorce or dissolution of a civil union. N.J.S.A. 2A:34-21.
[2] As noted in Raubar v. Raubar, 315 N.J.Super. 353, 362, 718 A.2d 705 (Law Div.1998), this language has remained unchanged since the statute was adopted in 1877.
[3] The Real ID Act, Pub.L. 109-13, 119 Stat. 302, Title II §§ 201 to 207 (enacted May 11, 2005), provided for stricter regulations on the issuance of state driver's licenses and established identification security standards to prevent identity theft and make it more difficult for would-be terrorists to acquire false identification documents. See 73 F.R. 5272 (Jan. 29, 2008). Nothing in the Real ID Act or in subsequent regulations promulgated by the Department of Homeland Security, 6 C.F.R. 37, expressly or implicitly prohibits a lawful permanent resident from obtaining a name change pursuant to state law.
[4] A federal agency's interpretation of its enabling statute and regulations is entitled to deference. Chevron, USA, Inc. v. NRDC, Inc., 467 U.S. 837, 843-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694, 703-04 (1984); Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944). In discerning an agency's interpretation of federal law, courts look not only to the agency's regulations, but to amicus curiae briefs filed by the agency, as well as less formal agency documents such as internal memoranda and forms. See Chase Bank USA, N.A. v. McCoy, ___ U.S. ___, 131 S.Ct. 871, 880, 178 L.Ed.2d 716, 727 (2011) (giving deference to the agency's interpretation, as expressed in an amicus brief); Fed. Express Corp. v. Holowecki, 552 U.S. 389, 399, 128 S.Ct. 1147, 1156, 170 L.Ed.2d 10, 21 (2008) (courts look for guidance to "the agency's policy statements, embodied in its compliance manual and internal directives," even if those documents are not given "full Chevron deference"); Id. at 406-07, 128 S.Ct. at 1160, 170 L.Ed.2d at 25 (noting the "all but countless forms, schedules, manuals, and worksheets" through which [t]he Federal government "interacts with individual citizens"). Consequently, in the absence of pertinent regulations, we look to USCIS publications as a source of federal policy.
[5] The current instructions direct applicants to submit the I-90 form electronically at www.uscis.gov or by mail to the USCIS in Phoenix, Arizona. Form I-90 Instructions (Rev. 11/23/10)Y at 6.