OPINION OF THE COURT
Debra Rose Samuels, J.
Petitioner, who is 50 years old, was born anatomically male and was given a traditionally masculine name, which remains petitioner’s legal name to this day. Petitioner’s Pennsylvania birth certificate identifies petitioner as male. Petitioner is married to a woman.
On March 27, 2002, petitioner applied to the court pro se, pursuant to Civil Rights Law § 60, for leave to assume a new name, stating that the change of first name was intended to help implement a sex change, while the change of last name was intended to alleviate employment discrimination.
On April 23, 2002, the court denied the application “without prejudice to renew with statement regarding marital status/ *826 children and proof, i.e., physician’s affirmation, of ihe completion of the sex change operation.”
In support of a renewed application, petitioner submitted a sworn statement attesting that petitioner was married and had no children; a notarized “Consent” to the proposed change of name from petitioner’s wife; and an unsworn letter from a physician and a certified social worker, both affiliated with the Michael Callen-Audre Lorde Community Health Center. The letter stated that
“Cynthia A. Frank, a.k.a. Frank Guido has been followed at our practice since December 2000 for a condition known as Gender Identity Disorde^. Ms. Frank, although born physically male, is actually psychologically female. As a result of her continuing treatment to resolve this conflict, we have determined that her psychological gender (i.e. female) predominates over her physical gender. ;
“Ms. Frank is now and has been for some time pursuing a program of gender reassignment. Part of this treatment includes living and working fulli-time as a woman. It is therefore important to her treatment, career, and lifestyle that she obtain vital documents that identify her as female. It is especially important for her driver’s license to reflect he]) current female gender. ■
“Ms. Frank’s treatment at present includes taking female hormones to help feminize her body and counseling to help her adjust to her adopted fqmale gender.
“In conclusion, we fully recommend that Ms. Cynthia Frank be provided with documentation that identifies her as a female, her predominant gender.”
In a decision/order dated September 25, 2002, the court denied the application, stating that such denial was
“without prejudice to renew upon completion of gender reassignment surgery and divorce froth his wife. Under the present state of the law, same-sex marriages are not recognized. It would therefore be inconsistent for this court to grant the relief requested, to permit the applicant to appear! and represent himself as female, while in fact he remains in a legal relationship with his wife premised on his being male.” .
The court cited Matter of Anonymous (155 Misc 2d 241 [Civ Ct, *827 Queens County 1992]), in which the court denied a name change application intended to help implement a change of sex, explaining that
“In considering whether the court should grant the within application for a change of name, the court has the responsibility to determine whether the proposed change will lead to fraud, misrepresentation, confusion, deception or otherwise interfere with the rights of the public. (Matter of ‘Shipley’, 26 Misc 2d 204.) The petitioner has failed to set forth sufficient facts upon which the court can make such a determination. He merely states in his petition that the purpose of changing his name is ‘to avoid embarrassing situations due to my sexual preference and physical well being’. The petitioner does not corroborate this claim by competent medical and psychiatric evaluation, including whether he is a transvestite or a transsexual and, if a transsexual, whether he has undergone a sex change operation and is now anatomically and psychologically a woman . . .
“The within application is, therefore, denied because, without such supportive evidence, the change of name from a ‘male’ name to a ‘female’ name would be fraught with danger of deception and confusion and contrary to the public interest. (Matter of Jevens, NYLJ, Oct. 18, 1976, at 15, col 4.)” (155 Misc 2d at 242.)
On this renewed application, made with the assistance of counsel, the court is persuaded that, in its prior approach to this application, informed by Anonymous (supra), the court concerned itself with matters outside the scope of the court’s jurisdiction and beyond the scope of the inquiry necessary to avoid lending the court’s assistance to fraud, deception or other interference with the rights of third parties.
In its previous denials, the court required evidence of sex reassignment surgery (which petitioner has apparently not had) and expressed concern about the legal conundrum presented by petitioner’s prospective change of sex from male to female while still married to a woman, while New York — despite considerable ferment in this area of the law — continues to sanction marriage only between people of the opposite sex. With the assistance of petitioner’s persuasive memorandum of law, however, the court has concluded that its concern with both issues was misplaced, *828 as they anticipate questions that simply are not raised by this application.
Petitioner has not asked this court to declare his sex changed from male to female, nor is such a declaration withijn the scope of this court’s powers. This court is asked only to sanction legally petitioner’s desire for a change of name, after satisfying itself that petitioner has no fraudulent purpose for doing so and that no other person’s rights are interfered with thereby. The court is satisfied on those questions. The law does! not distinguish between masculine and feminine names, which are a matter of social tradition. Some names are traditionally associated with one gender; some with the other; some with either. And, as pointed out by petitioner, the gender association of s.ome names has changed over time. Apart from the prevention ¡of fraud or interference with the rights of others, there is no reason — and no legal basis — for the courts to appoint themselves: the guardians of orthodoxy in such matters.
Whether petitioner has, in fact, effected a legally, cognizable change of sex and, if so, the implications of such ¡change for petitioner’s marriage (and the legal rights and responsibilities attendant thereto of both spouses), are questions that await resolution in another forum, in a case in which such questions are actually presented. In the accompanying order, the court, aware of its own jurisdictional limitations, has specified tha,t the order “may never be utilized as evidence of a court acknowledgment of a change in sex from male to female.” (See Matter of Rivera, 165 Misc 2d 307, 311 [Civ Ct, Bronx County 1995].)