942 A.2d 166 (2008)
398 N.J. Super. 539
In the Matter of the Application of E.F.G. to Assume a New Name,[1] Plaintiff-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 2008.
Decided March 17, 2008.
*167 Jane A. Herchenroder, Newark, argued the cause for appellant (Counsel to New Jersey Coalition for Battered Women, attorneys; Ms. Herchenroder, on the brief).
Before Judges WEFING, R.B. COLEMAN and LYONS.
The opinion of the court was delivered by
LYONS, J.A.D.
Plaintiff E.F.G. appeals from an order entered April 20, 2007, and an order dated June 4, 2007. The April 20 order denied plaintiff's application to assume a new name, her request to waive the requirement to publish notice, and her request that the matter be placed under seal and not be entered in any data base accessible by the public. The June 4 order denied plaintiffs motion for reconsideration of the April 10 order. Because we find that adhering to the rule requiring publication of an application to change a name would result in an injustice, and because we find that good cause exists to seal the court record in this matter, we reverse.
The following factual and procedural history is relevant to our consideration of the issues advanced on appeal. On April 16, 2007, plaintiff filed an action to assume another name in accordance with N.J.S.A. 2A:52-1. The statute reads as follows: *168 Any person may institute an action in Superior Court, for authority to assume another name. The complaint for a change of name shall be accompanied by a sworn affidavit stating the applicant's name, date of birth, social security number, whether or not the applicant has ever been convicted of a crime, and whether any criminal charges are pending against him and, if such convictions or pending charges exist, shall provide such details in connection therewith sufficient to readily identify the matter referred to. The sworn affidavit shall also recite that the action for a change of name is not being instituted for purposes of avoiding or obstructing criminal prosecution or for avoiding creditors or perpetrating a criminal or civil fraud. If criminal charges are pending, the applicant shall serve a copy of the complaint and affidavit upon any State or county prosecuting authority responsible for the prosecution of any pending charges. A person commits a crime of the fourth degree if he knowingly gives or causes to be given false information under this section.
[N.J.S.A. 2A:52-1.]
Plaintiffs verified complaint contained the information required by N.J.S.A. 2A:52-1. In addition, plaintiffs complaint advised the trial court that she was seeking a new name because she is a victim of domestic violence; her abuser continues to contact her after the entry of a restraining order; she believes that her life is in danger; and that she would like to start a new life.
Attached to plaintiffs complaint is a lengthy certification by plaintiff outlining in great detail the history of domestic violence to which she was subjected for many years. Plaintiffs certification has attached to it various police reports, medical records, court records, including protective orders and restraining orders, as well as photographs showing her injuries. A review of the verified complaint, and the certification attached to it, as well as all the exhibits, paint a sad and tragic picture of serious life-threatening domestic violence toward plaintiff.
In order to assume a new name, a plaintiff must not only comply with N.J.S.A. 2A:52-1, but also with Rule 4:72. That rule implements the statutory authority for a change of name. It provides that a verified complaint for a name change must contain the requirements set forth in the statute and that notice of the name change application must be published. Rule 4:72-3 reads in relevant part:
The court by order shall fix a date for hearing not less than 30 days after the date of the order. Notice of application shall then be published in a newspaper of general circulation in the county of plaintiffs residence once, at least two weeks preceding the date of the hearing.
As with almost all court proceedings, an application for a change of name is conducted in open court. R. 1:2-1. The records of name changes are generally available for public inspection and copying. See R. 1:38.
Because plaintiff has a well-founded concern that publication of her change of name application would provide her abuser with her address, as well as her new name, she filed a motion with the trial court to waive the requirement of publication, Rule 4:72-3, and to seal the record of her application to change her name pursuant to Rule 1:2-1. On April 20, 2007, the trial court denied plaintiffs application to change her name and to relax the requirement of publication. The trial court stated that her application to change her name was denied because she did not comply with the publishing requirement of Rule *169 4:72-3, The trial court, in denying the application, relied primarily on Basile v. Basile, 255 N.J.Super. 181, 604 A.2d 693 (Ch.Div.1992). In that case, a wife filed a domestic violence complaint against her husband alleging he was harassing and threatening her. The husband denied the wife's allegations and raised by way of counter-claim a request to change the child's surname to his own. The Basile court held that changing a child's surname was not within the authority of the court when hearing an action under the Prevention of Domestic Violence Act of 1991 (the Act), N.J.S.A. 2C:25-17 to -35. The court in Basile noted that in order to change a name, the applicant must comply with N.J.S.A. 2A:52-1 and Rule 4:72. The Basile court went on to note that the application by the husband did not satisfy the statutory or rule requirements, and concluded further that the Act did not authorize the court to entertain a change of name application.
The trial court in this matter, therefore, concluded that Basile required compliance with Rule 4:72 and that "[t]he court in Basile also reasoned that the Domestic Violence Act does not provide for a court to handle a change of name proceeding." The trial court noted further that there was no authority "which would except an abused person from publishing their name change." This appeal ensued.
On appeal, plaintiff argues that because the Legislature passed the Act to assure victims of domestic violence the maximum protection from abuse the law can provide, the trial judge should have permitted plaintiff to change her surname without requiring publication of her application.
We begin our consideration of plaintiffs argument by restating applicable legal principles. "It is well-settled that an adult can legally and properly change his or her name at will and without need of judicial approval simply by using the desired name in ordinary life so long as the adopted name is not used for a criminal or fraudulent purpose." In re Bacharach, 344 N.J.Super. 126, 130, 780 A.2d 579 (App.Div.2001). "The New Jersey change of name statute, N.J.S.A. 2A:52-1 to -4, provides an additional method for a change of name and provides a definitive and swift procedure for public recordation." Id. at 130-31, 780 A.2d 579. The record is clear in this matter that, but for the requirement to publish the application contained in Rule 4:72-3, plaintiff's application was in full compliance with both the statute and the rule.
We find that the trial court's reliance on Basile was mistaken. That case merely holds that a court does not have jurisdiction to grant a name change application as part of a pending domestic violence proceeding. While Basile stated "[w]ithout the satisfaction of [the] requirements [in N.J.S.A. 2A:52-1 and Rule 4:72], or some authority excepting the applicant from the requirements . . . a judgment changing the plaintiffs name cannot be entered," Rule 1:1-2 provides authority to relax rules in the appropriate case.[2]Basile, supra, 255 N.J.Super. at 183, 604 A.2d 693.
Rule 1:1-2 in pertinent part reads "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." "[T]his rarely-invoked font of discretion" provides authority to the trial court to dispense with a rule or a portion of a rule which, if *170 adhered to, would result in an injustice. Kellam v. Feliciano, 376 N.J.Super. 580, 587, 871 A.2d 146 (App.Div.2005). We are, of course, mindful, that "[c]ase law and common sense, however, demonstrate that Rule 1:1-2 is the exception, rather than the norm." State v. Williams, 184 N.J. 432, 442, 877 A.2d 1258 (2005). We also recognize that recourse to the rule should be sparing. Ibid. (citing Pressler, Current N.J. Court Rules, comment 1 on R. 1:1-2 (2005)). Accordingly, our Supreme Court has advised that "determining whether relaxation is appropriate . . . requires an examination and balancing of the interests that are at stake." Id. at 443, 877 A.2d 1258.
In this case, therefore, it is necessary to identify and balance the interests that are at stake in relaxing the requirement that a plaintiff who is a victim of domestic violence publish her application for a change of name. In the Act, the Legislature stated that "the Legislature finds and declares that domestic violence is a serious crime against society; that there are thousands of persons in this State who are regularly beaten, tortured and in some cases even killed by their spouses. . . ." N.J.S.A. 2C:25-18. The Legislature went on to state that "the intent of the Legislature [is] to assure the victims of domestic violence the maximum protection from abuse the law can provide." Ibid. The Legislature declared "it is the responsibility of the courts to protect victims of violence that occurs in a family or family-like setting by providing access to both emergent and long-term civil and criminal remedies and sanctions, and by ordering those remedies and sanctions that are available to assure the safety of the victims and the public." Ibid. In addition to those statements of policy from the Legislature, our Supreme Court has spoken eloquently concerning what some have referred to as an epidemic of domestic violence. Brennan v. Orban, 145 N.J. 282, 299, 678 A.2d 667 (1996). Our Supreme Court has stated "we believe that there is no such thing as an act of domestic violence that is not serious. Every action of recent Legislatures has been intended to underscore the serious nature of the domestic violence problem in our society." Id. at 298, 678 A.2d 667. The Supreme Court has found that "[o]ur law is particularly solicitous of victims of domestic violence. . . ." State v. Hoffman, 149 N.J. 564, 584, 695 A.2d 236 (1997). In particular, the Court noted that "[a]t its core, the [Act] effectuates the notion that the victim of domestic violence is entitled to be left alone. To be left alone is, in essence, the basic protection the law seeks to assure these victims." Ibid. It is abundantly clear, therefore, that affording the victims of domestic violence the maximum protection the law has to offer is a matter of vital and significant public policy in New Jersey.
As to factors which would weigh against relaxation of publication, we have recognized that a court entertaining a change of name must consider whether a waiver of publication would somehow provide an avenue for an applicant to obtain a new name so as to avoid or obstruct criminal prosecution, avoid creditors, or perpetrate a fraud. We note, of course, that the statute requires an affidavit, as was provided here, which requires an applicant to swear that the change of name is not being instituted for purposes of avoiding or obstructing criminal prosecution, avoiding creditors, or perpetrating a civil or criminal fraud. Moreover, a person who gives false information in that regard commits a crime of the fourth degree. N.J.S.A 2A:52-1. We also note that in relaxing the publication requirement of the rule, a trial court possesses inherent discretion to impose conditions that may be required to address specific concerns.
*171 Consequently, after engaging in the required balancing to determine whether relaxation is appropriate, we clearly find that in a case such as this, where plaintiff has demonstrated a well-founded concern for her personal safety as a result of prior domestic abuse, and where there is otherwise strict compliance with the change of name statute and rule, that to require adherence to the publication requirements of Rule 4:72-3 would result in an injustice. If we were not to relax the publication rules in this instance, plaintiff would be at grave risk in pursuing a change of name because her abuser could easily locate her, her new name, and her new address from either the publication of her application or the court records. Her application would be totally futile. She would be denied one avenue to obtain peace in her life, and an opportunity to live without fear and constant anxiety. We recognize the foreclosure of that opportunity to result in clear injustice.
The second issue raised by plaintiff is the denial of her request to seal the record of this application. Rule 1:2-1 provides in pertinent part that "no record of any portion [of a proceeding conducted in open court] shall be sealed by order of the court except for good cause shown, which shall be set forth on the record." Further, Rule 1:38 provides that court records are to be available for public inspection and copying, except for certain specific records, including those a court has ordered to be impounded or kept confidential. R. 1:38(e).
We have recently reviewed the sealing of court records. In Lederman v. Prudential Life Ins., 385 N.J.Super. 307, 316-17, 897. A.2d 362 (2006), we outlined the law concerning the sealing of records.
In this state, all proceedings shall be conducted in open court, and no record may be sealed except for good cause. R. 1:2-1. What constitutes good cause is governed by a standard of reasonableness. Hammock v. Hoffmann-La-Roche, Inc., 142 N.J. 356, 376, 662 A.2d 546 (1995). The Hammock Court explained the standard to determine when a court record or proceeding may be sealed.
There is a presumption of public access to documents and materials filed with a court in connection with civil litigation. That right exists under the common law as to the litigants and the public. . . . [T]he right of access is not absolute. Under both the common law and the First Amendment, a court may craft a protective order. [T]he strong common law presumption of access must be balanced against the factors militating against access. The burden is on the person who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption. Documents containing trade secrets, confidential business information and privileged information may be protected from disclosure.
[Id. at 375-76, 897 A.2d 362 (internal quotation omitted).]
The presumption of public access applies to all nondiscovery pretrial motions, and attaches to all "materials, documents, legal memoranda and other papers `filed' with the court that are relevant to any material issue involved in the underlying litigation (not simply relevant to a particular motion) regardless of whether the trial court relied on them in reaching its decision on the merits." Id. at 381, 897 A.2d 362. The presumption applies regardless of the disposition of the motion. Ibid.

To determine whether to seal the record, the court must conduct a "flexible *172 balancing process . . . to determine whether the need for secrecy substantially outweighs the presumption of access." Ibid. The burden of proof rests with the person who seeks to overcome the "strong presumption of access" to establish "by a preponderance of the evidence that the interest in secrecy outweighs the presumption." Ibid. That need for secrecy "must be demonstrated with specificity as to each document. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, are insufficient." Id. at 381-82, 897 A.2d 362. The evidence must demonstrate "why public access to the documents should be denied currently rather than rely on the fact that a protective order was entered earlier." Id. at 382, 897 A.2d 362.
Whether to seal or unseal documents is addressed to the discretion of the trial court. Id. at 380, 897 A.2d 362. In exercising that discretion, the court must be guided by the good cause standard. Id. at 380-83, 897 A.2d 362.
The facts in the matter before us clearly indicate that plaintiff has overcome the strong presumption of public access by establishing by a preponderance of the evidence that her interest in sealing these records outweighs the presumption. At issue is plaintiffs very safety which has been recognized by our public policy as having paramount importance. She has not made a broad unsubstantiated allegation of potential harm, but rather has submitted to the court a tragic and upsetting history, documenting domestic violence which warrants protection. Accordingly, we find that the trial court's failure to seal the record in this case constitutes a mistake in the exercise of its discretion.[3]
We have had the benefit of the recently published report of the Supreme Court's Special Committee on Public Access to Court Records. Report of the Supreme Court Special Committee on Public Access to Court Records (Nov. 29, 2007). That report is still under consideration, however, we note that its proposed revision to Rule 1:38-10 provides that a court record "may be sealed by court order for good cause. . . ." Id. at 24. "`Good cause' to seal a record shall exist when: (1) Disclosure will likely cause a clearly defined and serious injury to any person or entity; and (2) The person's or entity's interest in privacy substantially outweighs the presumption that all court and administrative records are open for public inspection pursuant to Rule 1:38." Ibid. That standard has been incontrovertibly met by the proofs before us.
Accordingly, we find that there exists in this case a compelling interest to waive the publication requirements of Rule 4:72-3 by utilizing Rule 1:1-2, and an equally compelling reason to seal the records in this matter pursuant to Rule 1:2-1 and Rule 1:38(e). Consequently, we reverse the trial court's orders and remand the matter so that the trial court can entertain the application for a name change, dispensing with the requirement of publication and sealing the record such that it not be available to any one other than plaintiff *173 and her counsel of record without a court order.[4]
Reversed and remanded.
NOTES
[1] Because we found that plaintiff has made a clear and convincing showing that there exists a genuine risk of physical harm to her, we have sua sponte, but with plaintiff's consent, amended the caption and allowed plaintiff to proceed anonymously. See A.B.C. v. XYZ Corp., 282 N.J.Super. 494, 505, 660 A.2d 1199 (App.Div.1995).
[2] We note N.J.S.A. 2A:52-1 does not require publication. That is a requirement only found in Rule 4:72-3.
[3] Rule 1:2-1 refers to "sealing a record" while Rule 1:38(e) refers to a court ordering a record to be "impounded" or "kept confidential." Our research indicates that the term seal and impound have been used interchangeably and without apparent difference. We note that the report of the Supreme Court's Special Committee on Public Access to Court Records proposes a revision to Rule 1:38. In that revision, it refers to "sealing" court records as opposed to "impounding" same.
[4] We note that by memorandum dated November 12, 1998, from the Acting Administrative Director of the Courts, trial courts are required by the Chief Justice to report their sealed records to the Assignment Judge, who, in turn, is required to file a bi-monthly report with the Director on a designated form.