163 A.3d 367

JANET SACKLOW, PLAINTIFF, v. RICHARD
BETTS, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Middlesex County

Decided: March 17, 2017

*Jennifer Weisberg Millner* for plaintiff (*Fox Rothschild LLP*, attorneys).

*Richard Betts*, defendant, pro se.

SILVA, J.S.C.

■ The matter before this court is one of first impression in this state. Plaintiff has petitioned this court to change the parties' sixteen-year-old transgender child's name from Veronica Betts to Trevor Adam Betts.[1] The question facing this court is the standard to apply and which factors the court should consider. As more fully explained herein, the court finds that the best interest of the child standard should govern the court's decision and that the following factors should be considered when determining whether a name change is in the minor child's best interest, where the minor child is transgender and wishes to assume a name they believe corresponds to the gender they identify with:

(1) The age of the child;

(2) The length of time the child has used the preferred name;

(3) Any potential anxiety, embarrassment or discomfort that may result from the child having a name he or she believes does not match his or her outward appearance and gender identity;

(4) The history of any medical or mental health counseling the child has received;

(5) The name the child is known by in his or her family, school and community;

(6) The child's preference and motivations for seeking the name change;

(7) Whether both parents consent to the name change, and if consent is not given, the reason for withholding consent.

## I. Procedure to Change a Minor's Name

The application for a minor's name change implicates various procedural requirements. First, pursuant to *N.J.S.A.* 2A:52–1 and *Rule* 4:72–1(a), an application to change a minor's name shall be commenced by filing a verified complaint setting forth the grounds for the application.

The complaint shall contain the date of birth of the minor child and shall state:

(1) That the application is not made with the intent to avoid creditors or to obstruct delinquency prosecution or for other fraudulent purposes;

---

[1] At the parties' request, this court has used the parties' real names. It was also Trevor's desire that his name be used in this opinion.

(2) Whether the minor child has ever been convicted of delinquency and if so, the nature of the delinquent behavior and the sentence imposed; and

(3) Whether any delinquency charges are pending against the child and if so, such detail regarding the charges as is reasonably necessary to enable the Division of Criminal Justice or the appropriate county prosecutor to identify the matter.

[*R.* 4:72–1(a).]

Additionally, if the minor is involved in a family action, "the complaint shall state whether the child or any party in interest . . . is the subject of a family action pending or concluded within the three years preceding the filing of the complaint." *R.* 4:72–1(b). The court finds that plaintiff's verified complaint satisfied the requirements of *N.J.S.A.* 2A:52–1, *Rule* 4:72–1(a), and *Rule* 4:72–1(b). It is uncontested that Trevor is not doing this with the purpose to defraud creditors or avoid criminal prosecution nor has Trevor ever been involved with the criminal justice system.

## II. Standard of Review On An Application to Change a Minor Child's Name

The seminal cases dealing with a minor child's name change are *Gubernat v. Deremer*, 140 *N.J.* 120, 657 *A.*2d 856 (1995) and *Emma v. Evans*, 215 *N.J.* 197, 71 *A.*3d 862 (2013). These cases dealt with the surname change of a minor child and set forth factors courts should consider when deciding a parent's application to change their minor child's surname.

In *Gubernat v. Deremer, supra,* 140 *N.J.* at 123, 657 *A.*2d 856, the Court determined that the main consideration for whether a minor's surname should be changed is whether it is in the best interests of the child. In order to assist the trial courts in making this determination, the Court set forth the following factors that should be considered in any surname change dispute for a minor child:

(1) The length of time the child has used his or her given surname;

(2) The identification of the child with a particular family unit;

(3) Potential anxiety, embarrassment or discomfort that may result from having a different surname from that of the custodial parent;

(4) The child's preference if the child is mature enough to express a preference;

(5) Parental misconduct or neglect, such as failure to provide support or maintain contact with the child;

(6) Degree of community respect, or lack thereof, associated with either paternal or maternal name;

(7) Improper motivation on the part of the parent seeking the name change;

(8) Whether the mother has changed or intends to change her name upon remarriage;

(9) Whether the child has a strong relationship with any siblings with different names;

(10) Whether the surname has important ties to family heritage or ethnic identity; and

(11) The effect of a name change on the relationship between the child and each parent.

[*Id.* at 142, 657 A.2d 856.]

▮ In a dispute to rename a child of unmarried parents, such as was the case in *Gubernat*, the party wishing to change the surname jointly given to the child at birth bears the burden of proving by a preponderance of the evidence that the change would be in the child's best interest.

In *Emma v. Evans, supra*, 215 *N.J.* at 215, 71 *A.*3d 862, the Court determined the best interest of the child test should be applied in determining whether to change the jointly given name of a child, regardless of whether the child was born out of wedlock or during the marriage and without a presumption in favor of the custodial parent.

▮ Relying on these cases, this court finds that the best interest of the child standard should apply to plaintiff's application. Although the factors set forth in *Gubernat* and *Emma* provide some guidance to this court, they do not fully address whether the proposed name change is in Trevor's best interest.

### III. Procedural History of Sacklow v. Betts

This instant application came before the court on a verified complaint filed by plaintiff on September 12, 2016. In the complaint, plaintiff requested that the court change the parties' child's

name from Veronica to Trevor. Plaintiff certified that the name change was in the child's best interest because the parties' child is transgender, identifies as male, and has been undergoing treatment for gender dysphoria. Defendant filed an answer to plaintiff's verified complaint on October 14, 2016, requesting that the court deny plaintiff's request. Defendant argued that a hearing was necessary in order for the court to determine if the name change was in the child's best interest.

On December 8, 2016, the court held a pretrial conference with the parties and a hearing date of March 7, 2017, was set. On March 7, 2017, the court heard testimony from plaintiff, Trevor, and defendant. The court notes that at the conclusion of the plaintiff's case, after cross-examining Trevor, defendant indicated his willingness to consent to the name change of the parties' child, yet continued to express his concern over whether it was in Trevor's best interest. Given the contentious nature of this case, plaintiff requested that the court make its own findings independent of defendant's consent. Furthermore, as explained more fully herein, this court finds that the consent of the minor child's parents is but only one factor to consider in determining if the name change is in the minor child's best interest.

### Background

The parties were married on September 22, 1996, and divorced on June 8, 2011. There was one child born of the marriage, Veronica.[2] The parties share joint legal custody of the minor child and plaintiff has been the parent of primary residence. Plaintiff has certified that looking back over the years, Trevor did not like the "typical girl toys, did not play with dolls and absolutely hated wearing dresses" but he "loved to play baseball and basketball, skateboard, and rollerblade." Essentially, Trevor did not conform to the gender norms of a young girl of that age. Plaintiff further

---

[2] At Trevor's request, this court has referred to him using the male pronoun throughout the litigation and continues to do so in this decision.

certified that she "believed, as did defendant, that [the child] was simply a quintessential 'tomboy.' "

However, it was not until Trevor entered the sixth grade that the parties began to notice a change in his behavior. By this time, Trevor had completed puberty and plaintiff noticed that his overall mental health and well-being had begun to decline. Trevor went from being a good student and never getting into trouble to "getting bad grades, lying, vandalizing school property, and fighting." As a result of Trevor's drastic change in behavior, he was referred to a child study team at school to deal with his emotional and behavioral problems. It was also at this time that plaintiff consulted with William Bishop, L.C.S.W. regarding the change in Trevor's behavior.

In January of 2012, Trevor began to see Bishop to work through his emotional and behavioral problems and in June of 2012, with the help of Bishop, Trevor announced to his family that he was transgender and that he identified as male. Both parties acknowledged that they struggled to understand Trevor's announcement. Upon the recommendation of Bishop, Trevor began to see Dr. Nina Williams, a licensed psychologist, who diagnosed him with gender dysphoria.[3] Trevor is treating with a variety of medical professionals who have established a treatment plan for Trevor to begin the physical and mental transition from female to male.

Approximately five years ago, when Trevor was twelve, he requested that he be called Trevor, not Veronica. Plaintiff informed her entire family and from that day forward, Trevor has been known as Trevor. According to Trevor's testimony, the only people that still call him Veronica are his father, his step-mother and step-siblings. Trevor testified that he feels that the name

---

[3] According to the American Psychiatric Association, gender dysphoria "involves a conflict between a person's physical or assigned gender and the gender with which he/she/they identify."

better represents who he is and the gender with which he identifies.[4]

In March of 2014, both parties filed motions before this court regarding Trevor medical treatment. This court's June 11, 2014, order permitted both parties to have Trevor examined by a professional specializing in the diagnosis and care of transgender youth. Both parties took Trevor to defendant's chosen expert in New Hampshire and then to the Children's Hospital of Philadelphia (hereinafter CHOP). With both parties' consent, Trevor began receiving hormone treatments at CHOP to suppress menstruation in 2014. Recently, in July of 2016, with consultation with his doctors at CHOP and the consent of both parties, Trevor began testosterone therapy.

IV. Analysis

Despite the constant changes that have occurred in the legal landscape as it relates to gender identity, sexual orientation and similar issues, the issue of whether a transgender minor child should be permitted to change his or her name to better match his or her gender identity is a novel one for this court. Initially, "transgender people have experienced, for some time, difficulty in changing their names for any reason." Sharon Stapel, Falling to Pieces: New York State Civil Legal Remedies Available to Lesbian, Gay, Bisexual, and Transgender Survivors of Domestic Violence, 52 N.Y.L. Sch. L. Rev. 247, 266 (2007–2008). Some courts would not allow a transgender person to change their name absent proof of gender reassignment surgery; a requirement that no longer exists. In re Guido, 1 Misc.3d 825, 771 N.Y.S.2d 789 (N.Y. Civ. Ct. 2003).

Over twenty-five years ago, in Matter of Eck, 245 N.J.Super. 220, 221, 584 A.2d 859 (App. Div. 1991), our appellate court

---

[4] When asked why he chose the name Trevor, his answer was that of a typical teenager. Trevor stated that a friend of his said he looked like a Trevor, so he started using Trevor.

reversed a trial court's denial of an individual's application for a name change. The trial court had held that "it is inherently fraudulent for a person who is physically a male to assume an obviously 'female' name for the sole purpose of representing himself to future employers and society as a female." In its decision, the appellate court determined that "[a]bsent fraud or other improper purpose a person has a right to a name change whether he or she has undergone or intends to undergo a sex change through surgery, has received hormonal injections to induce physical change, is a transvestite, or simply wants to change from a traditional 'male' first name to one traditionally 'female' or vice versa." *Id.* at 245, 584 *A.*2d 859.

If Trevor were an adult, the only findings the court would have to make are those under *N.J.S.A.* 2A:52–1. However, Trevor is a minor child whose parents share legal custody and disagree (at least initially) on whether he should be permitted to change his name from Veronica to Trevor. The court, in exercising its most important role as parens patriae, must make its own findings of fact and make a determination as to whether the name change is in Trevor's best interest.

Within the existing parameters of New Jersey law, adults are able to make decisions regarding the course of their transition to the gender they identify with. Adults can petition the court for a name change or consent to gender reassignment surgery or treatment. However, children are unable to make such decisions on their own unless they have been deemed emancipated. Most states will require children to defer to their parents' wishes regarding decisions that affect the child's life and well-being. However, courts routinely become involved in decisions that affect the child's life and well-being where there is a dispute between the child's parents as to the appropriate course of action for the child. This is usually heightened when dealing with transgender children because often times there is a dispute between the parents as to the appropriate course of treatment and action to allow the transgender child to identity with his or her chosen gender.

A review of statutes and codes in other states reveals varying standards and procedures for changing a minor child's name. California and Indiana, for example, only require that the minor have the consent of both parents to change their name. *Ind. Code Ann.* § 34–28–2–2 (West 2017), *Cal. Civ. Proc. Code* § 1276 (West 2017) and *Cal. Civ. Proc. Code* § 1278.5 (West 2017). Some states apply the best interest of the child standard when deciding a minor's name change request. *See e.g. Ohio Rev. Code Ann.* § 2717.01 (West 2016) (court will determine whether the name change is reasonable, proper and in the best interest of the child); *Va. Code Ann.* § 8.01–217 (West 1950), as amended (court must find that a change of name is in the best interest of the minor); *Vt. State. Ann.* tit. 15, § 812 (West 2016) (to obtain a name change for a minor, both parents must consent to the change or there must be a court finding that the name change is in the best interest of the minor); *S. Car. Code. Ann.* 15–49–10 (2016) (on a parent's application to change their minor child's name, the court shall appoint a guardian ad litem to represent the child and the application shall be granted if the court finds that it is in the best interest of the child.); *N.Y Civ. Law* § 60 (Consol. 2017) (court must find that it is in the best interest of the child before granting a name change application).

### a. Public policy considerations

"[A] name change sends an important message to the world, a message solidified and made official with a court's approval." Ally Windsor Howell, Transgender Persons and the Law 16–17 (2013). Our State "has a compelling interest in protecting the physical and psychological well-being of minors, including lesbian, gay, bisexual, and transgender youth." *N.J.S.A.* 45:1–54(n). Recognizing the importance of a name change is one of the ways to help protect the well-being of a transgender minor child. This name change allows the transgender minor child to begin to fully transition into their chosen gender and possibly prevent them from facing harassment and embarrassment from being forced to use a legal name that may no longer match his or gender identity.

b. This court's consideration of its factors

The first factor the court will consider is the age of the child. This motion was filed when Trevor was sixteen. Trevor will turn seventeen on April 20, 2017. The court finds that Trevor is of such an age and maturity that his opinion should be given great weight.

The second factor to consider is the length of time Trevor has used his chosen name. Trevor has been known as Trevor for five years now, which is a significant period of time given his age.

The third factor is any potential anxiety, embarrassment, or discomfort that may result from having a name that the minor child does not feel corresponds with his or her outward appearance and gender identity. This is the most compelling factor for the court in this case. The fear that Trevor will be bullied or harassed if his name is not changed from Veronica to Trevor is supported by the myriad studies demonstrating that transgender youth are bullied and harassed at an alarming rate. Joseph G. Kosciw, et al., The 2013 National School Climate Survey, GLSEN xvii (2014), https://www.glsen.org/sites/default/files/2013% 20National% 20School% 20Climate% 20Survey% 20Full% 20Report_0.pdf. The detrimental effects that bullying and harassment can have on Trevor include poor academic performance and outcome, absenteeism from school, and at its very worst, suicide contemplation. Beth Sherouse, No More LGBTQ Youth Left Behind, HUMAN RIGHTS CAMPAIGN (May 12, 2015), http://www.hrc.org/blog/no-more-lgbtq-youth-left-behind. Almost fifty percent of transgender youth have seriously contemplated suicide. *Ibid.* During her testimony, plaintiff testified that on at least two occasions, Trevor was hospitalized because of suicidal ideations he expressed to his treating therapists.

The fact that Trevor did not testify to a personal experience of violence or crime against him based on his gender identity does not negate the fact that such violence exists. On October 27, 2009, gender identity was included as a federal hate crime. "Recognizing that transgender people continue to be disproportionately targeted

for bias motivated violence, the federal statute, known as the 'Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act' (Pub. L111–84 § 4701 et seq.), adds . . . gender identity . . . to the categories included in existing federal hate crimes law. . . . " *Matter of E.P.L.*, 26 *Misc.*3d 336, 891 *N.Y.S.*2d 619, 621 (N.Y. Sup. Ct. 2009).

The fourth factor is the history of any medical or mental health counseling the child has received. Trevor has received medical treatment and mental health counseling for five years to address his gender dysphoria. He has a deep understanding and appreciation of his gender identity. Trevor is committed to living his life as a male.

The fifth factor is whether the minor child's family and community, including school, identify the child by the preferred name. Trevor plays on his high school football and wrestling teams. All of his teachers and friends call him "Trevor." In fact, the only time he is called Veronica is when he is at his father's house or there is a substitute teacher.

The sixth factor is the minor child's preference and motivations for seeking the name change. Trevor's motivation is purely a personal one. He is not seeking to defraud creditors or avoid criminal prosecution. Trevor's only desire is that his name match his outward appearance and gender identity. Trevor testified that sometimes when there is a substitute teacher who does not know him, the teacher will call "Veronica" and when Trevor responds affirmatively, he is chastised by the teacher. Trevor wishes to change his name now, as opposed to waiting until he is eighteen (at which point the procedure would much easier under *Eck* ) because he will soon be obtaining a driver's license, applying to college and during the summer of 2017, he is planning on traveling to China. It is important to Trevor that his driver's license, passport, and travel visa match his identity.

The final factor that the court considers is whether both parents consent to the name change, and if consent is not given, the reason for withholding consent. The plaintiff filed this application on

Trevor's behalf. The defendant, Trevor's father, initially opposed the application, however, after cross-examining Trevor seemed to consent to the name change.

"Experts emphasize that it is very important to transgender youth to have their gender recognized and validated." Allison S. Bohm et al, Seventeenth Annual Review of Gender and Sexuality Law: Annual Review Article: Challenges Facing LGBT Youth, 17 GEO. J. GENDER 7 L. 125, 140 (2016). Trevor has undergone hormone therapy and presents as a young man with facial hair, a muscular build, a head full of male-textured hair, and a deeper voice. To force him to legally keep the feminine name "Veronica" would not be in his best interest. Therefore, plaintiff's motion to legally change Veronica's name to Trevor is granted. Plaintiff shall comply with the publication and filing requirements under *Rule* 4:72–4.[5]

---

[5] *Rule* 4:72–3 requires the publication of the notice of application for a name change and *Rule* 4:72–4 requires publication of the judgment granting the name change and the filing of the judgment with the county clerk and Department of Treasury. These publication requirements have been dispensed with in cases involving victims of domestic violence. *In re E.F.G.*, 398 *N.J.Super.* 539, 547–49, 942 *A.2d* 166 (App. Div. 2008). There may be cases involving minor children where a court would not require the publication of a name change. However, given the parties' request that their real names be used in this decision and the fact that Trevor is the subject of a documentary, this court does not find it necessary to protect his identity and thus will order plaintiff to comply with the publication and filing requirements.