# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3247-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

G.M.,

     Defendant-Appellant.

_____

Argued September 22, 2025 – Decided October 7, 2025

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FO-02-0413-24.

Kenneth Ralph argued the cause for appellant (Bruno & Ferraro, attorneys; Kenneth Ralph, of counsel and on the brief).

Jaimee M. Chasmer, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant G.M. appeals from a May 29, 2024 order finding him guilty of contempt, N.J.S.A. 2C:29-9(b)(2), a disorderly persons offense, for placing a single phone call to his then-spouse, K.M., a victim under a Temporary Restraining Order (TRO). G.M. argues the court erred in finding him guilty because the State did not establish that he purposely or knowingly placed the alleged call to K.M. in violation of the TRO, and did not meet its burden of proof beyond a reasonable doubt that he committed the offense of contempt. We agree and vacate and reverse.

We incorporate by reference the facts and procedural history recited in our companion opinion K.M. v. G.M., No. A-3136-23 issued today for purposes of this appeal. We repeat only those facts necessary to our disposition of the court's finding of contempt.

On January 28, 2024, the court granted a TRO against G.M., which included a provision barring G.M. from contacting his then-wife, K.M. The TRO expressly prohibited G.M. from having "any oral, written, personal, electronic, or other form of contact or communication with [K.M.]." (emphasis in original). G.M. was served with a copy of the TRO on the same day.

2

Approximately five days later, K.M. contacted the police to report that G.M. had called her cell phone. She did not answer the call but took a screenshot using her cell phone. The incoming call showed the call was from a contact in K.M.'s phone named "G." After reporting the call to police, K.M. advised that "G." is the name associated with her then-estranged husband, G.M., in her cell phone. The investigating officer, Officer Hyou Lee, confirmed the telephone number belonged to G.M. and charged him with contempt under N.J.S.A. 2C:29-9.

Trial on the contempt charge commenced on May 29, 2024 with K.M. and two police officers testifying: Officer Daniel Munoz, who had previously arrested G.M. on the assault and harassment charges contained in the TRO complaint; and Officer Lee. Officer Munoz testified he served G.M. with the TRO while he was at police headquarters on January 28, with the assistance of a Russian interpreter. He further testified that G.M. acknowledged the restrictions, signed after each statement, and acknowledged that he understood the TRO.

Officer Lee testified that he responded to a call from K.M. regarding a possible violation of a TRO. He met K.M. in her apartment and discussed the missed call alleged to be from G.M.'s number and K.M. provided him with a

3

screenshot of the call. Officer Lee called into police headquarters to verify the owner of the phone behind the call, and following confirmation the number belonged to G.M., Officer Lee filed the putative complaint charging G.M. with contempt.

K.M. testified that following the issuance of the TRO on January 28, G.M. called her from his cell phone "[o]n February 2, towards the evening." She knew it was his cell phone number because they had lived together for thirty-five years and "that's the way [his number was] saved in [her] cell phone." K.M. did not answer the call. Instead, she took a screenshot of the call log with her cell phone and showed that to Officer Lee.

Following trial, the court summarized the evidence and made specific factual findings, including that G.M. was advised of the prohibitions in the TRO against having any written, or other contact with his wife.[1] In addressing the applicable purposeful and knowing standard, the court reasoned "it is not necessary that the State prove or produce witnesses to testify that an accused said that he had a certain state of mind when he engaged in a particular act." The court explained that it had the authority "to find that such proof has been

---

[1] The court correctly noted G.M. asserted his Fifth Amendment right and did not testify, and no negative inferences could be made from his decision.

A-3247-23

furnished beyond a reasonable doubt by inference, which may arise from the nature of the defendant's acts or conduct and all the surrounding circumstances."

The court determined G.M. was guilty of the offense by virtue of G.M. having been served with the TRO, knowledge of its no-contact provision, and its conclusion it was G.M. who had called K.M. The court stated it declined to "speculate about all kinds of scenarios where [G.M.] didn't make the call himself." The court noted it was firmly convinced G.M. had called K.M. and on that basis it found G.M. guilty of the offense beyond a reasonable doubt.

This appeal followed.

Our review of a court's finding of guilt in a contempt proceeding is limited to determining "whether the record contains sufficient [credible] evidence to support the judge's conclusion[,]" of guilt beyond a reasonable doubt. State v. J.T., 294 N.J. Super. 540, 544 (App. Div. 1996) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). A court's factual findings will not be disturbed unless we are convinced "'they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Rova Farms Resort, Inc. v. Investors Ins., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, we do not defer to a court's legal conclusions if "'based upon

a misunderstanding of the applicable legal principles.'" T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting N.T.B. v. D.D.B., 442 N.J. Super. 205, 215 (App. Div. 2015)).

Under N.J.S.A. 2C:29-9(a), a person is guilty of a contempt charge if:

> [T]he person purposely or knowingly disobeys a judicial order or protective order, pursuant to section 1 of P.L.1985, c.250 (C.2C:28-5.1), or hinders, obstructs, or impedes the effectuation of a judicial order or the exercise of jurisdiction over any person, thing, or controversy by a court, administrative body, or investigative entity, or purposely or knowingly violates a condition to avoid all contact with an alleged victim or a condition of home detention.
>
> [N.J.S.A. 2C:29-9(a) (emphasis added).]

Our Supreme Court has emphasized the necessity of proving the element of intent in criminal contempt cases, holding that the State has the burden of proving that contact was knowing and purposeful. State v. Gandhi, 201 N.J. 161, 187 (2010). A person acts "purposely" where it is "his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2(b)(1). A person acts "knowingly"

> with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he

is aware that it is practically certain that his conduct will cause such a result.

[N.J.S.A. 2C:2-2(b)(2).]

For the State to meet its burden of proof on the fourth-degree contempt charge, it must prove beyond a reasonable doubt that G.M. was conscious of his actions and their consequences, or at the very least aware of the high probability that the conduct would violate the order. State v. D.G.M., 439 N.J. Super. 630, 642 (App. Div. 2015) (citing State v. L.C., 283 N.J. Super. 441, 447 (App. Div. 1995)).

Before us, G.M. argues his conviction must be vacated because the State did not prove him guilty of the offense beyond a reasonable doubt. He contends the State failed to produce any evidence that he called K.M., arguing: that the police "never took any investigative steps to look into the circumstances of the alleged call;" K.M. could not definitively identify who called her because she did not answer the call that she alleges came from her husband's phone; and the caller did not leave a voicemail message. He further contends, "the record does not establish that [G.M.] made the call," and the court merely relied on the screenshot from K.M.'s phone as evidence. G.M. also maintains he was under no obligation to prove that he did not make the call, and "[e]ven if a call came from [his] phone to his estranged wife's phone, there is no proof that the call

7

was made by him." In further support of this argument, G.M. posits that the call "could have occurred by accident, mistake, or inadvertence in the handling of the phone" as evidenced by the fact there was one call only, no voicemail and no text message. Lastly, G.M. argues the State also failed to establish, beyond a reasonable doubt that he purposely or knowingly engaged in conduct that violated the statute as required under N.J.S.A. 2C:2-2(b)(1) to (2).

Given these arguments, we address the following two questions: whether the State proved it was G.M. who made the call to K.M. in violation of the TRO, and if so, whether the State established his actions were purposeful and knowingly committed, as required to establish mens rea. D.G.M., 439 N.J. Super. at 642.

As a preliminary matter, we have no quarrel with the court's finding G.M. was properly served with the TRO and understood the provisions prohibiting him from having any contact with K.M. The court's findings on these points are well-supported by the record, including the testimony of Officer Munoz, and are thus entitled to deference. Rova Farms, 65 N.J. at 484. We, however, part ways with the court's legal reasoning and conclusion the State proved G.M. had the requisite intent to purposely and knowingly contact K.M. in violation of the TRO. It is settled law that the State must prove a contempt charge beyond a

reasonable doubt. State v. Finamore, 338 N.J. Super. 130, 138-39 (App. Div. 2001).

We reach this conclusion because the record is devoid of any evidence regarding the caller beyond K.M.'s testimony the call was made from G.M.'s phone, and we decline to infer from the mere call itself, the identity of the person behind the call, and purposeful intent to make the call rather than an inadvertent "pocket dial" to a previously stored phone number. We do not reach this conclusion lightly, nor do we intend to suggest that a single telephone call to a victim of domestic violence is inconsequential as a matter of law. To the contrary, we recognize that the TRO prohibited "any" contact with K.M., which is sacrosanct as victims of domestic violence have a legal right to be left alone. See State v. Hoffman, 149 N.J. 564, 584 (1997) ("To be left alone is, in essence, the basic protection the law seeks to assure [domestic violence] victims."). See also In re E.F.G., 398 N.J. Super. 539, 546 (App. Div. 2008).

However, on these limited facts, involving a single phone call, which the victim did not answer, there is insufficient evidence to establish that the caller was G.M. or identify the caller as G.M, or purposeful intent to make the call rather than an accidental dial.

A-3247-23

Moreover, guided by the above legal principles, we conclude there is nothing in this record to have persuaded the court that the caller purposely or knowingly intended to disobey a judicial or protective order, or violate a condition to avoid all contact with an alleged victim. Thus, although we have no doubt K.M. received a call from G.M.'s phone, the lone call, without explanation, is insufficient to establish the requisite intent to violate the contempt statute on the part of G.M. See State v. S.K., 423 N.J. Super. 540, 547 (App. Div. 2012) ("[T]he evidence must allow at least a reasonable inference that a defendant charged with violating a restraining order knew his conduct would bring about a prohibited result."). Absent a showing of intent, there was insufficient evidence adduced at trial to "firmly convince" the court G.M. was in fact the person who made the putative call or find beyond a reasonable doubt that G.M. had the requisite intent to be guilty of contempt. Accordingly, the order finding G.M. guilty of contempt for violating the TRO against him is vacated and reversed.

Vacated and reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

10

A-3247-23